**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| COUNTY OF DORCHESTER, SOUTH CAROLINA, <br><br> *and* <br><br> TOWN OF SUMMERVILLE, SOUTH CAROLINA <br><br><div align=center>Plaintiffs,</div><br> v. <br><br> AT&T CORP. and BELLSOUTH TELECOMMUNICATIONS, LLC, <br><br><div align=center>Defendants.</div> | Civil Action No. 2:18-cv-2890-RMG <br><br><div align=center>**<u>CLASS ACTION COMPLAINT</u>**</div><br><div align=center><u>JURY TRIAL DEMANDED</u></div> |

Plaintiffs County of Dorchester, South Carolina, and Town of Summerville, South Carolina ("Plaintiffs"), file this Class Action Complaint against Defendants AT&T Corp. and BellSouth Telecommunications, LLC ("Defendants") on behalf of themselves and all similarly situated local governments in South Carolina. Plaintiffs, both local governments, make the following allegations based upon personal knowledge as to their own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiffs' attorneys. The proposed Class includes "all towns, counties and other local governments in the State of South Carolina that have collected 911 service charges pursuant to S.C. Code Ann. §§ 23-47-10, *et seq.* from October 25, 2015 until the present." Plaintiffs and the proposed Class allege as follows:

## INTRODUCTION

1.     This is a proposed class action for compensatory and punitive damages, for injunctive relief, and for any other relief deemed appropriate by this Court, arising out of Defendants' failure to properly bill, collect, and remit 911 charges as required by South Carolina law and local ordinances; specifically, South Carolina's 911 law, S.C. Code Ann. §§ 23-47-10, *et seq.*

2.     Plaintiffs, in order to finance their 911 Centers or Public Safety Answering Points ("PSAPs"), opted by ordinance to assert their statutory authority to impose a monthly charge on each "local exchange access facility" and each "voice over internet protocol ("VoIP") service line." *See* Dorchester Cnty. Ordinance 12-20*, et. seq.* and the Town of Summerville 911 Ordinance, attached as Exhibit A.  Dorchester County's current 911 service charge is $0.99 and the Town of Summerville's current 911 service charge is $0.93.  *See Id.*

3.     Under both S.C. Code Ann. 23-47-10, *et seq.*, and each of Plaintiffs' local ordinances, Defendants must collect the applicable 911 charge and remit it to Plaintiffs on a monthly basis, minus an administrative fee "not to exceed two percent of the gross E911 service fee revenue remitted to the service supplier on behalf of the county."  Dorchester Cnty. Ordinance § 12-20 (10); Ex. A.

4.     Defendants knowingly violate South Carolina's 911 law in Dorchester County, the Town of Summerville, and the entire State of South Carolina by not billing their subscribers the required amount of 911 charges and under-remitting 911 charges to Plaintiffs and all similarly situated counties, towns, and other local governments supporting their own PSAPs and collecting 911 service charges pursuant to §§ 23-47-10, *et seq.*  Similarly, Defendants misrepresent that the amounts remitted reflect the appropriate number of exchange access facilities and voice over

internet protocol ("VoIP") service lines subject to the 911 charge and constitute the full remittance required by law. Defendants' under-billing occurs with subscribers who have multi-line capability, and thus, have many phone numbers. Thus, the violations almost always involve business subscribers as opposed to individuals.

5.     Defendants' conduct injures Plaintiffs and the Class because their 911 emergency services are not fully, properly, and adequately funded as required by South Carolina law, which leads to budget shortfalls that can have dire consequences for the public. The public is harmed when South Carolina's local governments cannot fund their 911 emergency services in the manner that the General Assembly intended and is forced to divert funds from other sources to support 911 emergency services.

6.     Accordingly, this action seeks damages and injunctive relief to remedy Defendants' violations of their duties under South Carolina law and local ordinances.

## PARTIES, JURISDICTION, AND VENUE

7.     Plaintiff County of Dorchester, South Carolina, is a county and political subdivision of the State of South Carolina, residing in Dorchester County. It is a "local government," as defined by applicable law.

8.     Plaintiff Town of Summerville, South Carolina, is a town and political subdivision of the State of South Carolina, also residing in Dorchester County. It is a "local government" as defined by applicable law.

9.     Defendant AT&T Corp. is a telecommunications company and "service supplier," as defined by applicable law. AT&T Corp. provides telecommunications services to subscribers in Dorchester County, South Carolina and the Town of Summerville, South Carolina. AT&T Corp. provides telecommunication services in at least forty-one of South Carolina's forty-six

counties, as well as various towns and cities that maintain their own PSAPs. At all relevant times, AT&T Corp. was a corporation, organized and existing under the laws of the State of New York with its principal place of business in Bedminster, New Jersey. AT&T Corp. is registered as a foreign entity with the South Carolina Secretary of State.

10.     Defendant BellSouth Telecommunications, LLC is a telecommunications company and "service supplier," as defined by applicable law. BellSouth Telecommunications, LLC provides telecommunications services to subscribers in Dorchester County, South Carolina and the Town of Summerville, South Carolina. BellSouth Telecommunications, LLC provides telecommunication services in at least forty-one of South Carolina's forty-six counties, as well as various towns and cities that maintain their own PSAPs. At all relevant times, BellSouth Telecommunications, LLC was a limited liability company, organized and existing under the laws of the State of Georgia. The sole member of BellSouth Telecommunications, LLC is AT&T Datacom, LLC, a Delaware limited liability company. The sole member of AT&T Datacom, LLC is AT&T Datacom Holdings, Inc., a Delaware Corporation with its principal place of business in Dallas, Texas. Thus, for the purposes of diversity jurisdiction BellSouth Telecommunications, LLC is not a citizen of South Carolina. BellSouth Telecommunications, LLC is registered as a foreign entity with the South Carolina Secretary of State.

11.     No claims in this action arise under federal law.

12.     The parties in this case are completely diverse. Plaintiffs and every member of the Class are citizens of South Carolina, and Defendants are citizens of states other than South Carolina. The amount in controversy exceeds $75,000.00. Thus, the Court has diversity, subject matter jurisdiction under 28 U.S.C. §1332(a).

13.     Venue is proper in this Court under 28 U.S.C. §1391 because at all times relevant to this Complaint, Defendants have engaged in continual business in this District and, for the purposes of venue, are deemed to reside in this District under 28 U.S.C. §1391(c).

## FACTUAL ALLEGATIONS

**A.     911 Emergency Services in Dorchester County and the Town of Summerville**

14.     South Carolina has enacted laws governing and authorizing the creation of local 911 emergency services.  The laws authorize local governments, which include cities, towns, counties, and other political subdivisions across South Carolina, to establish, operate, and maintain their 911 emergency systems in their respective jurisdictions, known as "service areas."

15.     The 911 Center in Dorchester County is referred to as the "E911 Dispatch Center" and is managed and operated by the Dorchester County Sheriff's Office.  The E911 Dispatch Center serves all of Dorchester County, except for the area covered by the Town of Summerville's PSAP.

16.      The 911 Center in the Town of Summerville is referred to as the "Summerville Emergency Communications Center" and is managed and operated by the Summerville Police Department.  The Summerville Emergency Communications Center serves all of the Town of Summerville.

17.     Each local governmental entity member of the class also runs its own 911 Center or PSAP that is managed by and in coordination with the local police or sheriff's department.  Each 911 Center throughout the state likewise serves the citizens and visitors within the relevant geographical boundaries when an emergency arises.

18.    These 911 Centers' trained personnel work around the clock, receiving 911 telephone calls and transmitting emergency information to the proper authorities throughout Dorchester County, the Town of Summerville, and the State of South Carolina.

**B.    Overview of Telecommunications Technology and How Defendants Should Assess 911 Charges Throughout South Carolina**

19.    Plaintiffs' and the Class's 911 Centers provide 911 emergency dispatch services within their respective geographical boundaries, and collectively provide all of the emergency services in the State of South Carolina. Plaintiffs and the unnamed class members must finance those operations. To that end, Plaintiffs and the Class receive funding from any number of sources. The critical – and in most instances primary – source of funding is a charge imposed upon telephone service lines in each class members' service area. Plaintiffs and the Class have depended on this source of funding since they enacted local ordinances to assess and collect 911 service charges. *See e.g.*, Dorchester Cnty. Ordinance §§ 12-19-12-24 (1992); Ex. A.

20.    To fund 911 emergency services, South Carolina law authorizes Plaintiffs and the Class to assess a monthly "911 charge" on local exchange access facilities and VoIP service lines. *See* S.C. Code 23-47-10(17), (38); S.C. Code Ann. § 23-47-40(A); S.C. Code Ann. § 23-47-67(A). The law also requires telephone service suppliers like Defendants to bill each telephone subscriber an amount of 911 charges that reflects the accurate number of exchange access facilities and service lines, to collect those charges, and to remit those charges to the appropriate local government "within forty-five days of the end of the month during which such charges were collected." S.C. Code Ann. § 23-47-50(D). Service suppliers "are entitled to retain two percent of the gross 911 charges remitted to the local government as an administrative fee." *Id.*

21.    Local governments like Plaintiffs and the Class have the option to impose a 911 charge on telephone service lines in their service area, and if they choose to impose one, they must do so by passing appropriate local ordinances.

22.    Plaintiffs and the Class elected to impose a 911 charge in their service areas, and they rely on the revenue from the 911 charges to fund their 911 Centers and to provide emergency dispatch services in their respective jurisdictions.

23.    Dorchester County passed an ordinance that tracks the state law.  It states that "each service supplier providing local telephone access services to telephone subscribers having access to emergency services . . . shall commence the billing and collection of a telephone service charge for each subscriber's access line which is served by that service supplier."  Dorchester Cnty. Ordinance 12-20(2).  This charge is called the "E911 service fee."  *Id.*  The ordinance further states that "[t]he E911 service fee charge shall be monthly per applicable subscriber line, for each billed line intended to have access to emergency service through the county E911 emergency telephone system."  Dorchester Cnty. Ordinance § 12-20(3) (1992).  Dorchester County imposes a 911 fee in the amount of $0.99.

24.    The Town of Summerville also passed an ordinance that tracks the state law.  It states that the E911 service fee charge "shall be $.93 per month per applicable subscriber line for each billed lined intended to have access to Emergency Service through the Town of Summerville E 9-1-1 System."  Ex. A, § 3(B).  This charge is called the "E 9-1-1 Service Fee charge."  *Id.*  The Ordinance further states that "[t]he Service Supplier shall remit to the Town of Summerville E 9-1-1 Service Fee Collections within 45 calendar days following the end of the month of collection . . . ."  *Id.* § 3(E).

25. Therefore, at all times relevant to this action, Plaintiffs and the Class imposed valid 911 charges on all applicable local exchange access lines and VoIP service lines, and the revenue from those 911 charges went directly to their provision of 911 emergency dispatch services in Dorchester County and the Town of Summerville.

### a. Exchange Access Facilities

26. The South Carolina 911 statute defines three types of telephone lines: Exchange access facilities, Commercial Mobile Radio Service ("CMRS") or mobile, and Voice over Internet Protocol ("VoIP"). CMRS/mobile phone 911 service charges are not at issue in this litigation.

27. The South Carolina statute defines an "exchange access facility" as "the access from a particular telephone subscriber's premises to the telephone system of a service supplier." S.C. Code 23-47-10(17). This means there is an actual, physical, connection from the premises of the consumer to the local service provider or the publicly switched telephone network ("PTSN"). The actual connection is often referred to as a "channel," and exchange access facilities encompass most traditional telephone service.

28. South Carolina's statute refers to three types of access facilities: "Exchange access facilities include service supplier provided access lines, PBX trunks, and Centrex network access registers, all as defined by the South Carolina Public Service Commission." *Id.*

29. "Service supplier provided access lines" refers to what most people think of as traditional residential telephone service. This type of service is commonly referred to as "POTS" which stands for "Plain Old Telephone Service." This connection utilizes individualized copper wires only capable of supporting one voice conversation at a time, i.e., it creates only one channel to the PTSN and 911 service.

30.     As technology advanced, Defendants gained the ability to allow businesses and other large subscribers to make multiple calls at once over a single wire.  These copper wires were broken into twenty-three separate coordinated "time slots."  This process is referred to as Time Division Multiplexing ("TDM").  TDM was further refined with the advent of digital protocols known as Primary Rate Interface ("PRI") which allows telecommunication providers to carry up to twenty-three simultaneous voice conversations over a single wire connection.

31.     Since not every telephone user in a business will be making a call at the same time, PRI-based connections can support hundreds of telephone devices.    Therefore, the telecommunications industry developed a standard "trunking ratio."  This assumes that each available channel can support five to eight telephone numbers.  Thus, a single twenty-three channel PRI can support between 115 and 184 working telephone numbers.

32.     PBX trunks are the channels coming in to a Private Branch Exchange ("PBX") that are then distributed amongst callers on a first-come-first-served basis.  This allows companies to take advantage of the "trunking ratio" for practical application.  A PBX is hardware and software installed and maintained inside of a business's facilities.  PBX technology took the place of a business's telephone switchboard operators by automating call delivery and message taking.

33.     Centrex network access registers are ports located at the service provider's premises that establish the number of concurrent Centrex calls allowed per Centrex customer.  Centrex is a hosted PBX type service located at the service provider facility.

34.     S.C. Code 23-47-50 describes subscriber billing for traditional telephone services (exchange access facilities) as follows:

> [A] subscriber must be billed a number of 911 charges equal to: (a) the number of outward voice transmission paths activated on such a facility in cases where the number of activated outward voice transmission paths can be modified by the subscriber only with the

assistance of the service supplier; or (b) five, where the number of activated outward voice transmission paths can be modified by the subscriber without the assistance of the service supplier.

S.C. Code 23-47-50(A).

35.    Thus, all traditional telephone services are assessed by access line or channel: "the number of outward voice transmission paths activated on such a facility . . . ." For the individual residential user, discussed *supra*, who has only a single copper wire and a single potential connection to 911 service, that means a single charge.

36.    On the other hand, for a business or other organization with many phones, phone numbers, and access lines, Defendants must assess one 911 service charge for each access line or "outward voice transmission path[]." Defendants should assess a PRI with twenty-three channels no fewer than twenty-three 911 service charges, because the PRI is capable of simultaneously connecting twenty-three separate users to the 911 system.

37.    Subsection (b) caps the number of 911 service charges per access line to five where the subscriber has purchased fractional PRI service not delivered by a broadband connection that allows it to modify the number of channels without the assistance of the service supplier. This type of service is rare, and therefore most of Defendants' subscribers are not subject to the five-line cap.

### b.    Voice Over Internet Protocol ("VoIP")

38.    More recently, in the last fifteen years, many large telephone users have replaced TDM and PRI service with a newer yet technology known as VoIP. VoIP connects calls by transferring audio or video over a network such as the Internet. Unlike the dedicated channels of traditional service, VoIP transmits calls through any data connection running on a public or private data network, and VoIP is not limited in the number of calls it can simultaneously complete at any given time.

39.     Internet Protocol ("IP") breaks data into tiny packets transmitted over an IP-enabled network and later reassembles those pieces at the end connection point.  VoIP's data packets contain voice, and VoIP is supported by many different types of networks:  corporate, private, public, cable, and even wireless networks.  In other words, VoIP does not run solely over the Internet.

40.     VoIP also lacks the physical limitations of traditional service.  Whereas a single PRI system can support twenty-three simultaneous calls, VoIP can support as many calls as the amount of bandwidth purchased will support.  VoIP can support thousands of numbers and devices.

41.     South Carolina's statute assesses VoIP differently than traditional telephone service.  It requires that Defendants assess VoIP connections by individual telephone number.  S.C. Code 23-47-67 states that "[a] VoIP provider must collect the VoIP 911 charge established in subsection (A) on *each VoIP service line*."  S.C. Code § 23-47-67(B) (emphasis added).  The 911 statute defines VoIP service line as "a VoIP service that offers *an active telephone number* or successor dialing protocol assigned by a VoIP service provider to a customer that has outbound calling capability."  S.C. Code 23-47-10(38) (emphasis added).  As this definition shows, because there is no physical limitation on how many users may connect to the 911 system using VoIP, a service line is simply any working telephone number with 911 capabilities.

**C.     Defendants' Failure to Collect and Remit 911 Charges to Plaintiffs and the Class**

42.     At all times relevant to this action, each of the Defendants, or agents or subsidiaries under their control, failed to bill, collect, and remit the appropriate amount of 911 charges to Plaintiffs and the Class as required by South Carolina law and local ordinances.  Defendants are knowingly and routinely under-billing, under-collecting, and under-remitting these 911 charges.

Consequently, Defendants' monthly remittances of 911 charges to Plaintiffs and the Class are false and misleading, and they deprive Plaintiffs and the Class of critical funding for their 911 Centers.

43.     Specifically, Defendants charge all or nearly all of their business subscribers to PRI service five (5) 911 charges, despite the fact that § 23-47-50(A)(a) requires Defendants to assess 23 911 charges, which is equivalent to "the number of outward voice transmission paths activated on each facility . . . ." Defendants claim that *all* of their PRI subscribers fall within the exception to § 23-47-50(A)(b). This is not the correct interpretation of § 23-47-50(A), and results in an absurd outcome, an exception that swallows the entire rule.

44.     For VoIP service lines, Defendants claim to charge by simultaneous call capability. But § 23-47-67(B) assesses VoIP by service line, which means telephone number. Defendants' interpretation of the South Carolina 911 Statute is incorrect.

45.     Not only are Defendants misinterpreting the plain language of South Carolina's 911 Statute, but they are also interpreting the law differently that their competitors. For example, Sprint Communications Company, L.P. sells VoIP service in Richland County and it charges all VoIP customers by telephone number because it interprets the term "service line" to mean telephone number, as it should.

46.     Defendants know that South Carolina law and local ordinances require them to bill, collect, and remit 911 charges on each local exchange access line, i.e., channel, and each VoIP service line in Plaintiffs' service areas and throughout the State. The South Carolina law and local ordinances imposing the 911 charge are unambiguous, and there is no confusion in complying with the requirements. Yet, Defendants routinely fail to bill, collect, and remit the correct amount of 911 charges, or fail to bill, collect, or remit 911 charges at all.

47.     Defendants know the correct amounts of 911 charges to remit to Plaintiffs and the Class and are doing nothing to correct their noncompliance.  For example, at a 2012 telecommunications industry conference in Orlando, Florida, one presentation warned that not understanding the proper way to apply 911 service charges could cause carriers to "either under-collect or over-collect such fees from customers on a frighteningly large scale."  In 2013, a similar presentation at the same conference noted that the presenter's "estimates show carriers misreport their annual 911 fees by $50,000,000.00 alone!"

48.     Defendants are in touch with and on top of industry trends and issues and have been aware of the issue of E911 under-billing since 2006.  Indeed, they have now been sued over the same or similar practices in at least the following jurisdictions:  Pennsylvania, Georgia, Minnesota, Washington, D.C., Massachusetts, Alabama, Iowa, Chicago, New Jersey, and Florida.  The actions in each state vary and in some subtle ways the 911 statutes do as well.  The point, however, is clear:  Defendants have been on notice of this issue for years and cannot claim otherwise.  Yet, they have not fixed the problem.

49.     In 2006, for example, the Madison County, Alabama Emergency Communications District brought suit against Bellsouth Telecommunications, Inc. in the Northern District of Alabama.  In 2009, the court denied Bellsouth's Motion for Summary Judgment. *Madison County Communications District v. BellSouth Telecommunications, Inc.*, Civil Action No. CV–06–S–1786–NE, 2009 WL 9087783 (N.D. Ala. Mar. 31, 2009).

50.     As it does in South Carolina, BellSouth claimed that Alabama's statute charged PRI or exchange access service based on physical wires or lines and assessed only five 911 charge per PRI for all customers.[1]   The district Court rejected both positions.  "The commonly accepted

---

[1] The Alabama statute is similar but not identical to South Carolina's statute and  has been recently amended.

definition of the term 'exchange access line' does not refer only to *physical lines* between service users and the local exchange network, but rather refers to all *voice pathways* capable of accessing local exchange service." *Id.* at 7 (emphasis in original).  The Court also recognized that Alabama's 911 statute requires a uniform charge as to various types of services.  *See Madison County*, 2009 WL 9087783 at \*8.  BellSouth's practice, however, of assessing five 911 charges per PRI, regardless of the number of active voice pathways on that PRI, was not uniform.  *See id.*  This was particularly evident considering that Alabama's statute assessed VoIP by ten-digit phone number. *See id.*

51.    In South Carolina, the statute is even clearer.  It actually states that an exchange access facility capable of completing more than one call is assessed by "the number of outward voice transmission paths activated on such a facility . . . ."  S.C. Code Ann. § 23-47-50(A)(a).  It defines VoIP service line as any "telephone number" that has "outbound calling capability."  S.C. Code Ann. § 23-47-10(38).  Nonetheless, Defendants do not follow this plain language and have not reformed their billing practices, choosing instead to do nothing until the counties of Charleston and Richland sued them.

52.    Although motive is not an element of any of Plaintiffs' claims, Plaintiffs believe Defendants inadequately bill, collect, and remit applicable 911 fees for several reasons.  One compelling motivator is that Defendants who circumvent the law maintain a competitive edge over providers that comply with the law.  For instance, if Sprint Communications L.P. charges each of is VoIP customers in Richland County by telephone number, as it should and does, in compliance with the law, then it is at a competitive disadvantage with the Defendants in this case.  Its customers' bills will be higher than Defendants' customers, who do not assess 911 charges in compliance with the law, due to inadequate billing of 911 fees.

53.     Additionally, Defendants' billing systems are outdated and have been for years. In order to bring those systems into compliance with the law, it would cost Defendants many millions of dollars. Instead of spending that money and billing 911 service charges in compliance with the law, Defendants typically assess 911 service charges in Dorchester County, the Town of Summerville, and the rest of South Carolina, the same as they do in most of the United States, regardless of the relevant law in any given jurisdiction.

54.     Prior to the filing of this action, Defendants never informed Plaintiffs or the Class that they were inadequately billing and collecting 911 charges on the appropriate lines in Plaintiffs' service areas or in the State of South Carolina or that they were inadequately remitting 911 charges to Plaintiffs and the Class.

55.     In short, Defendants' actions are intentional and reckless and, among other things, constituted a fraud on the Plaintiffs and the Class. The "who, when, and where" of the fraud is straightforward:

   a.     *Who*: each Defendant named herein has regularly submitted remittances to Plaintiffs and the Class that do not comply with law, i.e., under-remit;

   b.     *Where*: each Defendant remits to the Plaintiffs in Dorchester County, the Town of Summerville, and the relevant geographical bounds of each Class member; and

   c.     *When*: each Defendant commits this fraud on a monthly basis when it submits an inaccurate remittances to the Plaintiffs and the Class members.

56.     Each remittance is a false statement to Plaintiffs and the Class. For example, with their monthly 911 remittances to Plaintiffs and the Class, Defendants typically submit a remittance form. The form represents the number of "Gross Units" that Defendants claim they owe 911 service charges, as well as the "Units Subject to Tax." The form then multiplies the relevant 911 service charge to arrive at the amount Defendants claim to owe. The form also contains a signature

15

line below which is printed an affirmation that "I hereby declare that all information provided herein is true and accurate to the best of my knowledge."

57.     These constitute false statements for several reasons. First, Defendants misrepresent the number of "Gross Units" and "Units Subject to Tax" because they are intentionally and knowingly under-reporting the number of taxable lines and not calculating the 911 service charges consistent with South Carolina's 911 Statute. Second, the affirmation below the signature block is also false because the signing employee from Defendants is a) aware that Defendants do not properly assess 911 service charges in South Carolina or b) has recklessly signed the document without doing anything to verify that Defendants are appropriately assessing and remitting 911 charges in South Carolina.

58.     Plaintiffs and the Class have relied on the accuracy of every remittance, every month, for the relevant time period. During the relevant time period, Plaintiffs and the Class had no accurate way to assess internally how many active channels or service lines – assessable or otherwise – each Defendant sells and services. Only Defendants have access to that information. Thus, Plaintiffs and the Class have not and never have been in a position to know that Defendants' remittances were false.

**D.     Harm Caused by Defendants' Failure to Collect and Remit 911 Charges**

59.     As a result of Defendants' unlawful practices, Plaintiffs and the Class and, as a result, their 911 Centers are not receiving the 911 charges that they are entitled to by law, and the 911 Centers are not fully funded and cannot afford to purchase necessary technology or to maintain critical infrastructure. Therefore, Plaintiffs and the Class respectfully seeks appropriate relief from this Court on the grounds listed herein.

## ADDITIONAL CLASS ACTION ALLEGATIONS

60.     Plaintiffs bring this suit as class action on behalf of themselves and all others in similarly situated South Carolina local governments pursuant to Rules 23(a) and 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.  This case is perfectly suited for class resolution. Indeed, it class certification is the most efficient and fair way to address this issue because the South Carolina 911 Statute must and does apply uniformly throughout the state to all class members.  The class is defined as: "all towns, counties and other local governments in the State of South Carolina that have collected 911 service charges pursuant to S.C. Code Ann. §§ 23-47-10, *et seq.* from October 25, 2015 until the present."  The counties of Charleston and Richland are excluded from the Class as each county has filed its own separate, individual action in this district.

61.     **Numerosity:**  Members of the Class are so numerous that joinder is impracticable. The precise number of Class members is unknown to Plaintiffs at the present time.  However, South Carolina has 46 counties.  Of those, Defendants provide telecommunications service to subscribers in at least forty-one (41), if not all, of South Carolina's counties.  In addition, South Carolina has more than seventy (70) separate PSAPs within its borders.

62.     In some instances, a single PSAP serves a single county.  For example, in Charleston County there is a consolidated 911 center.  Alternatively, in some counties, the county assesses 911 service charges to support its PSAP and a municipality within that county's borders may separately assess 911 service charges to support a separate PSAP.  That is the case with Dorchester County and the Town of Summerville.  In other words, there are well over forty (40) separate unnamed class members in the Class who support individual PSAPs using funds derived from the 911 service charge authorized by S.C. Code §§ 27-43-10, *et seq*.

17

63. The Class is readily identifiable from information and records in Defendant's possession and from publicly available records. Each PSAP is tracked by and reports to the FCC, and the local governments within the State of South Carolina are readily identifiable and locatable.

64. **Commonality:** This case presents common questions of law and fact as to the putative class members, including:

    a. Whether Defendants have assessed, collected, and remitted the proper number of 911 service charges to the Plaintiffs and the Class under S.C. Code Ann. §§ 23-47-10, *et seq.*;

    b. Whether Defendants' interpretation of S.C. Code Ann. §§ 23-47-10, *et seq.*, is correct;

    c. Whether Defendants have violated their statutorily mandated duties to Plaintiffs and the Class as outlined in S.C. Code Ann. §§ 23-47-10, *et seq.*;

    d. Whether by virtue of Defendants' statutorily mandated duties, informational advantage and relationship of trust, a fiduciary duty exists between Defendants and the Plaintiffs and the Class. Notably, this duty either exists for the Class as a whole and is not dependent upon individualized circumstances because it arises from common statutory duties and information that no Class member possesses, making it ripe for class adjudication;

    e. Whether Defendants' actions are negligent, i.e., they have breached their duties to Plaintiffs and the Class;

    f. Whether injunctive relief and declaratory judgment are appropriate remedies for Defendants' actions; and

    g. Whether Defendants actions are fraudulent, intentional, reckless or grossly negligent such that punitive damages are warranted.

    h. Whether Plaintiffs and the Class have sustained damages and, if so, the proper measure thereof.

65. **Typicality:** Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all class members have been injured by the same wrongful conduct of Defendants. Defendants interpret South Carolina's 911 Statute in the same manner throughout the State. Thus if, as Plaintiffs claim, Defendants are not properly assessing, collecting and remitting 911 service

charges to Plaintiffs, they are not properly assessing, collecting and remitting 911 service charges to the Class as a whole.

66.    **Adequate Representation:** Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the Class.  Plaintiffs have retained counsel and law firms that are experienced in telecommunications actions and the prosecution of complex class actions.

67.    **Rule 23(b):** Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) and (b)(3).  Certification is appropriate under 23(b)(2) because Defendants treat Plaintiffs and all members of the Class the same way, i.e., it acts on grounds that generally apply to the Class, such that final injunctive relief and a corresponding declaratory judgment are appropriate for the Class.

68.    Certification is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over questions only affecting individual members of the class.  The most relevant question of law is whether Defendants are properly interpreting their obligations under S.C. Code §§ 23-47-10, *et seq.*, and under-assessing, under-collecting, and under-remitting 911 service charges to the Class as a whole.  This question, of course, must be resolved in the same manner for all local governments in South Carolina because the 911 Statute applies equally and in the same manner to them all.  This issue is capable of class-wide proof, as are the other significant issues in this case.

69.    **Superiority:** Class action treatment is a superior method for the fair and efficient adjudication of the controversy in that, among other things, such treatment will permit this Court to resolve the statewide issues of how to apply the 911 Statute on a statewide basis.  This is the most efficient way of resolving this dispute, without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.  The benefits of proceeding

through the class mechanism, including providing injured entities with a method for obtaining

redress on claims that might not be practicable to pursue individually, substantially outweigh any

difficulties that may arise in management of this class action.

## CLAIMS FOR RELIEF

### COUNT ONE

### VIOLATION OF THE 911 CHARGE STATUTE

**(Brought as to Plaintiffs and the Class)**

70.     Plaintiffs hereby incorporate the allegations set forth in the previous paragraphs of

this complaint as if fully set forth herein.

71.     The 911 charge statute, S.C. Code Ann. § 23-47-50, imposes upon Defendants a

duty to bill, collect, and remit to Plaintiffs and Class the 911 charges upon each local exchange

access facility and VoIP service line.

72.     Plaintiffs and the Class are intended beneficiaries within the protection of the 911

charge statute.  The 911 charges that the 911 statute requires Defendants to bill, collect, and remit

to Plaintiffs and the Class provide a significant source of funding for Plaintiffs' and the Class's

provision of 911 emergency services throughout the State.

73.     In violation of the 911 charge statute and in breach of their duty, Defendants did

not bill, collect, and remit to Plaintiffs or the Class all 911 charges upon each local exchange access

facility and VoIP service line.

74.     Plaintiffs and the Class have an explicit and implied right of action under the 911

charge statute to recover from Defendants all 911 charges that Defendants were required to bill,

collect, and remit to Plaintiffs and the Class.  The South Carolina General Assembly intended for

Plaintiffs and the Class to have this right of action.

75.    The 911 Statute states that Plaintiffs and the Class may initiate a collection action for unpaid charges.  § 23-47-50.

76.    The existence of an implied right of action under the 911 charge statute is also consistent with the 911 charge statute's underlying purpose of providing a means for delivery of 911 emergency services to the public.  If the 911 charge statute cannot be enforced against service suppliers that purposefully or negligently fail to fulfill their obligations under the 911 charge statute, no means would exist to ensure the funding of 911 emergency services as intended by the South Carolina General Assembly.

77.    Defendants' violation of the 911 charge statute proximately caused Plaintiffs and the Class to suffer significant injury.

78.    For these reasons, Plaintiffs and the Class request that the Court enter judgment against Defendants in favor of Plaintiffs and the Class, and award compensatory damages, punitive damages, attorneys' fees, interest and costs, and any other relief to which Plaintiffs and the Class may be entitled.

## COUNT TWO

## BREACH OF STATUTORY DUTY

### (Brought as the Plaintiffs and the Class)

79.    Plaintiffs and the Class hereby incorporate the allegations set forth in the previous paragraphs of this complaint as if fully set forth herein.

80.    Plaintiffs and the Class bring this action to recover damages for Defendants' breach of legal duties owed by virtue of the requirements of the 911 charge statute, S.C. Code Ann. § 23-47-50.

81.    Defendants violated their legal duties and obligations to Plaintiffs and the Class by failing to bill, collect, and remit 911 charges for every telephone subscriber as required by the 911 charge statute.

82.    Defendants' violations of their duties under the 911 charge proximately caused Plaintiffs and the Class to suffer significant injury.

83.    For these reasons, Plaintiffs and the Class request that the Court enter judgment against Defendants in favor of Plaintiffs and the Class, and award compensatory damages, punitive damages, attorneys' fees, interest and costs, and any other relief to which Plaintiffs and the Class may be entitled.

## COUNT THREE

## BREACH OF FIDUCIARY DUTY

### (Brought by Plaintiffs and the Class)

84.    Plaintiffs and the Class hereby incorporate the allegations set forth in the previous paragraphs of this complaint as if fully set forth herein.

85.    During all relevant times, Defendants were under a fiduciary duty to bill and collect the 911 charges upon each local exchange access facility and VoIP service line.  Defendants were further obligated by their fiduciary duty to remit to Plaintiffs and the Class those 911 charges, less an administrative fee.  These fiduciary duties were imposed upon Defendants by the 911 charge statute, S.C. Code Ann. § 23-47-50, and common law, and derive from the special and confidential relationship between Plaintiffs and the Class and Defendants.

86.    The fiduciary relationship between the parties gave rise to a duty of care on the part of Defendants to Plaintiffs and the Class whereby Defendants would act with utmost good faith, loyalty, and honesty toward Plaintiffs and the Class.

87.     The 911 charge statute sets out a system to fund 911 emergency services that requires local governments to rely upon telecommunications service suppliers, such as Defendants, to act in good faith and with honesty in billing, collecting, and remitting to Plaintiffs and the Class the appropriate 911 charges.

88.     Plaintiffs and the Class have to rely upon Defendants to act in good faith and with honesty because Plaintiffs and the Class are not aware of the actual number of local exchange access facilities and VoIP service lines, or of the actual amount of 911 charges Plaintiffs or the Class should receive.  Defendants have sole and exclusive control of that information.  As the sole parties possessing the information needed to determine the correct amount of 911 charges that should have been paid or transmitted to Plaintiffs and the Class, Defendants were and are in a dominant position in their relationship with Plaintiffs and the Class.  As Defendants determined the amount of 911 charges received by Plaintiffs and the Class, and as those 911 charges made were a significant source of Plaintiffs' 911 Centers' funding and the 911 Centers of the Class, Defendants effectively exercised control over Plaintiffs' 911 Center funding and of the Class's 911 Center funding.

89.     In relying on Defendants to perform their statutory obligations, Plaintiffs and the Class trusted Defendants would act with utmost good faith, loyalty, and honesty toward Plaintiffs and the Class.

90.     Defendants knowingly breached their fiduciary duties to Plaintiffs and the Class and the standard of care by:  concealing from Plaintiffs and the Class the actual number of local exchange access facilities and VoIP service lines; concealing from Plaintiffs and the Class the correct amount of 911 charges owed to them; failing to bill, collect, and remit to Plaintiffs and the

Class the full amount of 911 charges owed to them; and misleading Plaintiffs and the Class concerning the actual amount of 911 charges owed to them.

91.    Defendants' breaches of their fiduciary duties and the standard of care proximately caused significantly injury to Plaintiffs and the Class.

92.    For these reasons, Plaintiffs and the Class request that the Court enter judgment against Defendants in favor of Plaintiffs and the Class, and award compensatory damages, punitive damages, attorneys' fees, interest and costs, and any other relief to which Plaintiffs and the Class may be entitled.

## COUNT FOUR

## NEGLIGENCE AND NEGLIGENCE *PER SE*

### (Brought by Plaintiffs and the Class)

93.    Plaintiffs and the Class hereby incorporate the allegations set forth in the previous paragraphs of this complaint as if fully set forth herein.

94.    Defendants are under both statutory and common law duties to submit to Plaintiffs and the Class payment of the proper amount of 911 charges.  The 911 charge statute, S.C. Code Ann. § 23-47-50, imposes upon Defendants a duty to bill, collect, and remit to Plaintiffs and the Class 911 charges for all local exchange access facilities and VoIP service lines.  Defendants are also under a duty to bill, collect, and remit to Plaintiffs and the Class the 911 charges in good faith and in accordance with the standards applicable to reasonable service suppliers.

95.    Defendants breached these duties by failing to exercise reasonable care to determine that they were properly billing and collecting for all local exchange access facilities and VoIP service lines.  Defendants also breached these duties by failing to use reasonable care to

ensure that the amounts remitted to Plaintiffs and the Class were the full and appropriate amounts for all local exchange access facilities and VoIP service lines.

96.     Defendants' breaches of their duties to exercise reasonable care in the billing, collecting, and remitting of 911 charges actually and proximately caused significant injury to Plaintiffs and the Class.

97.     Defendants' breach of the statutory duty imposed by the 911 charge statute also constituted negligence *per se*.  The 911 charge statute imposed a duty on Defendants to bill, collect, and remit to Plaintiffs and the Class 911 charges on all local exchange access facilities and VoIP service lines.  Plaintiffs and the Class are within the class of persons the 911 charge statute was designed to protect as it was an intended recipient of the 911 charges, and relied on payment of those charges to fund its essential, statutorily-authorized operations.

98.     Plaintiffs' injuries and the Class's injuries, including failure to receive the funds to which they are entitled under the 911 charge statute, are the precise injuries the 911 charge statute was designed to prevent, and these injuries hinder and impair Plaintiffs' and the Class's ability to provide 911 services in furtherance of the 911 charge statute's stated purposes.

99.     Defendants' breaches of their duties proximately caused significant injury to Plaintiffs and the Class.

100.     For these reasons, Plaintiffs and the Class pray that the Court enter judgment against Defendants in favor of Plaintiffs and the Class, and award compensatory damages, punitive damages, attorneys' fees, interest and costs, and any other relief to which Plaintiffs and the Class may be entitled.

## COUNT FIVE

## CONSTRUCTIVE FRAUD

### (Brought as to Plaintiffs and the Class)

101.    Plaintiffs and the Class hereby incorporate the allegations set forth in the previous paragraphs of this complaint as if fully set forth herein.

102.    The 911 charge statute imposes upon each Defendant a duty to bill, collect, and remit to Plaintiffs and the Class the 911 charges upon each local exchange access facility and VoIP service line, according to the structure detailed *supra*.

103.    Each Defendant submitted remittances and remittance forms to Plaintiffs and the Class on a monthly basis that purported to accurately reflect the appropriate number of gross local exchange access facilities and VoIP service lines and taxable exchange access facilities and VoIP service lines the relevant geographic areas.

104.    These remittance forms contained signature lines indicating that the information represented and the payment made is true and accurate to the best of the signatories knowledge.

105.    In fact, the signatory, and employee of Defendants, did nothing to ensure that Defendants accurately and truthfully represented the correct number of gross and taxable exchange access facilities and the VoIP service lines.  To the contrary, Defendants knew that they were under-assessing, under-collecting, and under-remitting 911 service charges to Plaintiffs and the Class.

106.    Each Defendant's representations to Plaintiffs and the Class were therefore false at the time they were made, as each Defendant omitted a significant number of local exchange access facilities and VoIP service lines and under-reported the amount of 911 charges owed to Plaintiffs and the Class under the 911 charge statute.

26

107.    As the purpose of the representation in the monthly remittances was to communicate the appropriate amount of 911 charges owed to Plaintiffs and the Class, Defendants' remittances misrepresented material facts.

108.    Each Defendant knew their representations in their monthly remittances regarding the amount of 911 charges owed to Plaintiffs and the Class were false because they knew they did not bill and collect the appropriate 911 charge on all local exchange access facilities and VoIP service lines in the relevant service areas, and instead charged fees in Dorchester County, the Town of Summerville, and the other relevant areas, in the same manner they charged in other jurisdictions across the country, without complying with the South Carolina specific requirements.

109.    Alternatively, each Defendant's misrepresentations were made recklessly because each Defendant was capable of determining (and required to determine) the correct number of local exchange access facilities and VoIP service lines in each of the relevant service areas.

110.    Plaintiffs and the Class, having no knowledge that Defendants' representations were false and a right to rely on Defendants' representations, reasonably relied upon the misrepresentations and suffered significant injury as a proximate result.

111.    Therefore, each Defendant committed fraud monthly when they submitted their inadequate 911 fees to Plaintiffs and the Class.  The person making this misrepresentation is the telecommunications company who is responsible for assessing, collecting, and remitting 911 service charges to Plaintiffs and the Class.  These checks and remittance forms were fraudulent because each time a Defendant remitted funds or caused funds to be remitted to Plaintiffs and the Class, it asserted that the amount on the check was the full amount owed, when in fact such amount was intentionally deficient.

112. For these reasons, Plaintiffs and the Class prays that the Court enter judgment against Defendants in favor of Plaintiffs and the Class, and award restitution and any other relief to which Plaintiffs and the Class may be entitled.

## COUNT SIX

## REQUEST FOR DECLARATORY JUDGMENT

### (Brought as to Plaintiffs and the Class)

113. Plaintiffs and the Class hereby incorporate the allegations set forth in the previous paragraphs of this complaint as if fully set forth herein.

114. An actual, present, and justiciable controversy has arisen and now exists between Plaintiffs and the Class and Defendants concerning Defendants' legal obligations under the 911 charge statute, S.C. Code Ann. § 23-47-50, to bill, collect, and remit to Plaintiffs and the Class payment of 911 emergency charges based on the number of local exchange access facilities and VoIP service lines, and Defendants' conduct in discounting 911 charges to their subscribers to seek competitive advantage or for other reasons.

115. The 911 charge statute has at all relevant times imposed upon Defendants the obligation to bill, collect, and remit payment to Plaintiffs and the Class 911 charges for all local exchange access facilities and VoIP service lines.

116. A judicial declaration regarding these issues is necessary and appropriate so that Plaintiffs and the Class may ascertain and effectively enforce their rights to receive full and complete payment of 911 charges as authorized by the 911 charge statute. For these reasons, Plaintiffs and the Class pray that the Court issue a declaratory judgment expressly holding that the 911 charge statute at all relevant times has imposed upon Defendants the obligation to bill, collect, and remit to Plaintiffs and the Class 911 charges for all local exchange access facilities and VoIP

service lines, and that Defendants may not forego collection of 911 charges or reduce 911 charges to gain competitive advantage or otherwise.

## COUNT SEVEN

## REQUEST FOR PERMANENT INJUNCTION

### (Brought as to Plaintiffs and the Class)

117.    Plaintiffs and the Class hereby incorporate the allegations set forth in the previous paragraphs of this complaint as if fully set forth herein.

118.    Defendants are obligated by the 911 charge statute, S.C. Code Ann. § 23-47-50, and other applicable law to truthfully and fully remit to Plaintiffs and the Class 911 charges imposed on all local exchange access facilities and VoIP service lines.

119.    Defendants' failure to meet their statutory obligations have and will continue to irreparably harm Plaintiffs and the Class because Plaintiffs and the class rely upon the 911 charges to provide funding for its critical 911 emergency operations.

120.    Defendants' failure to meet their statutory obligations have threatened, and will continue to threaten, the public's safety.

121.    Plaintiffs and the Class do not have any other adequate legal remedy at law because future enforcement of its rights under the 911 charge statute would likely require Plaintiffs and the Class to continually file and litigate multiple actions.

122.    A permanent injunction is warranted considering the balance of hardships between the parties.  Defendants would suffer absolutely no legally cognizable harm from being required to meet their statutory obligations.  Conversely, Plaintiffs and the Class and the public will be manifestly and actually harmed by Defendants' failure to fulfill their statutory obligations.

123.    The public interest would be served by the issuance of a permanent injunction.

124.     For these reasons, Plaintiffs and the Class prays that the Court permanently enjoin Defendants from failing to bill, collect, and remit to Plaintiffs and the Class 911 charges for all local exchange access facilities and VoIP service lines.

## COUNT EIGHT

## PUNITIVE DAMAGES

### (Brought as to Plaintiffs and the Class)

125.     Plaintiffs and the Class hereby incorporate the allegations set forth in the previous paragraphs of this complaint as if fully set forth herein.

126.     Defendants are obligated by the 911 charge statute, S.C. Code Ann. § 23-47-50, and other applicable law to truthfully and fully remit to Plaintiffs and the Class 911 charges imposed on all local exchange access facilities and VoIP service lines.

127.     Throughout the relevant time period, Defendants have known that they are not correctly billing, collecting the remitting 911 service charges in compliance with S.C. Code Ann. § 23-47-50 and relevant local ordinances.

128.     Defendants' failure to bill, collect and remit the correct amount of 911 charges is willful, wanton, and reckless under S.C. Code Ann. § 15-32-520.  They have taken these actions despite knowledge of the correct way to assess and remit 911 charges and with knowledge that their failure to fully collect and remit deprives Plaintiffs and the Class of funds needed to support life-saving technology and first responder services for South Carolina citizens.

129.     For these reasons, Plaintiffs and the Class pray that the Court enter judgment against Defendants in favor of Plaintiffs and the Class, and in addition to compensatory damages, award punitive damages.

## COUNT NINE

## VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT

### (Brought exclusively as to Plaintiffs and not the Class)

130.    Plaintiffs hereby incorporate the allegations set forth in the previous paragraphs of this complaint as if fully set forth herein, except for those allegations regarding the Class.  Plaintiffs understand that South Carolina law does not permit them to bring SCUTPA claims in a representative capacity, and therefore, pleads these SCUTPA claims individually and the in the alternative to their class claims, such that if the Court denies class certification, Plaintiffs have preserved their right to timely pursue their own SCUTPA claims.

131.    By not billing, collecting, and remitting all of the required 911 charges, Defendants can provide telecommunications services at rates that are cheaper than their competitors, particularly services to their business customers, and can, thereby, gain an unfair competitive advantage in the telecommunications services market.

132.    Defendants' services provided to Plaintiffs, which included the billing, collecting, and remitting of the 911 charges, are unfair and deceptive, and Defendants' unfair and deceptive conduct proximately caused and continues to proximately cause significant injury to Plaintiffs and the people of South Carolina.

133.    Defendants' conduct violates the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, *et seq.*, because it includes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

134.    Defendants knew or should have known that their conduct was a violation of the South Carolina Unfair Trade Practices Act, and therefore they willfully and knowingly violated the South Carolina Unfair Trade Practices Act and continue to do so.

31

135.    Plaintiffs are entitled to an award by this Court for actual damages trebled, attorneys' fees, interest and costs, and any other relief to which Plaintiffs may be entitled.

## PRAYER FOR RELIEF

136.    Plaintiffs and the Class respectfully request that this Court grant the following relief:

A.      That proper process issue and be served upon Defendants requiring them to appear and answer this complaint in the manner and within the time permitted by law;

B.      That Defendants provide Plaintiffs and the Class with a record of Defendants' accounts;

C.      That judgment enter against Defendants and in favor of Plaintiffs and the Class in the amount to be determined at trial, together with actual damages, treble damages, punitive damages, and all pre- and post-judgment interest accruing under applicable law;

D.      That this Court enter a declaration that the 911 charge statute, § 23-47-50 of the South Carolina Code, imposes, and at all relevant times has imposed, upon Defendants the obligation to bill, collect, and remit to Plaintiffs 911 charges for all local exchange access facilities and VoIP service lines;

E.      That this Court permanently enjoin Defendants from failing to fully bill, collect, and remit to Plaintiffs 911 charges for all local exchange access facilities and VoIP service lines;

F.      That Plaintiffs be awarded its costs of this action and its reasonable attorneys' fees;

G.      That a jury be impaneled to try all issues so triable by a jury; and

H.      That the Court award Plaintiffs such other general and special relief to which it may be entitled, as the Court deems appropriate, and as justice and equity may require.

*/s/ Lance V. Oliver*

Marlon E. Kimpson
Lance V. Oliver
Max Gruetzmacher
Annie E. Kouba
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(T) 843-216-9000
(F) 843-216-9450
mkimpson@motleyrice.com
loliver@motleyrice.com
mgruetzmacher@motleyrice.com
akouba@motleyrice.com

*Attorneys for Plaintiffs*

October 25, 2018
Mt. Pleasant, South Carolina