**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| COUNTY OF DORCHESTER, SOUTH CAROLINA, | |
| *and* | Civil Action No. 2:18-cv-2890-RMG |
| TOWN OF SUMMERVILLE, SOUTH CAROLINA | |
| Plaintiffs, | |
| v. | |
| AT&T CORP. and BELLSOUTH TELECOMMUNICATIONS, LLC, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE CLASS ALLEGATIONS AND PARTIAL MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ........................................................................................................... 1

FACTUAL ALLEGATIONS AND BACKGROUND ................................................... 3

I.      PROCEDURAL BACKGROUND ................................................................... 3

II.     SOUTH CAROLINA'S 911 SYSTEM AND SERVICE CHARGE ............... 4

III.    DEFENDANTS' OBLIGATIONS UNDER THE 911 STATUTE ................... 4

      A.     Exchange Access Facilities .................................................................... 5

      B.     VoIP Service Lines ................................................................................ 6

IV.    HISTORY OF 911 LITIGATION ................................................................... 6

ARGUMENT .................................................................................................................. 8

I.      PLAINTIFFS' CLAIMS ARE PERFECTLY SUITED FOR CLASS
      TREATMENT ................................................................................................ 8

      A.     Courts regularly certify classes of local governments and no law prohibits
            such a class in South Carolina. .......................................................... 8

      B.     Defendants' claim that Motley Rice does not have authority to represent
            the named Plaintiffs is frivolous. ...................................................... 13

      C.     Defendants' arguments about numerosity are premature and wrong. ... 14

II.     RULE 12(B)(6) ADDRESSES THE SUFFICIENY OF CLAIMS NOT THE
     VALIDITY OF LEGAL THEORIES ........................................................... 16

III.    THE 5-LINE EXCEPTION RAISES MULTIPLE FACTUAL ISSUES ....... 17

      A.     There is a factual dispute over the meaning of "multiplex" and "fractional
            PRI" and how the 911 Act applies to these terms. ............................ 17

      B.     There is a factual dispute about what it means to activate "outward voice
            transmission paths" with or without the "assistance of the service
            supplier." .......................................................................................... 18

IV.    THE 50-LINE CAP DOES NOT APPLY TO VOIP SERVICES ................ 19

      A.     "The amount of" the 911 charge, singular, is not the same as "total number
            of 911 charges," plural. .................................................................... 19

      B.     Plaintiffs' interpretation of the 911 Act presents no preemption issue. ........ 22

      C.     The 911 "charge" is not a tax. ........................................................... 25

V.     CONCLUSION ............................................................................................. 28

# TABLE OF AUTHORITIES

## CASES

*Abraham v. Palmetto Unified School District*,
  538 S.E. 2d 656 (S.C. Ct. App. 2000) ................................................................. 3, 19

*Ackal v. Centennial Beauregard Cellar L.L.C.*,
  700 F.3d 212 (5th Cir. 2012) ................................................................................ 2, 12

*Adams v. Air Methods Corp.*,
  No. 3:15-CV-1683-TLW, 2016 WL 7115905 (D.S.C. Aug. 12, 2016) ...................... 8

*Adkins v. Varne*,
  439 S.E. 2d 432 (S.C. 1993) ............................................................................... 19, 21

*Alig v. Quicken Loans Inc.*,
  No. 5:12-CV-114, 2015 WL 13636655 (N.D.W. Va. Oct. 15, 2015) ...................... 14

*Andersen v. Village of Glenview*,
  No. 17-CV-05761, 2018 WL 6192171 (N.D. Ill. Nov. 28, 2018) ............................ 17

*Armijo v. FedEx Ground Package System, Inc.*,
  285 F. Supp. 3d 1209 (D.N.M. 2018) ................................................................. 20, 24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 16

*Autauga Emergency Management Communication District v. Bellsouth Telecommunications, LLC*,
  Case No. 2:15-cv-00765-SGC, 2016 WL 5848854 (N.D. Ala. Oct. 6, 2016) ........... 7

*Babchuck v. Indiana University Health, Inc.*,
  299 F.R.D. 591 (S.D. Ind. 2014) ............................................................................ 18

*BBL, Inc. v. Angola*,
  809 F.3d 317 (7th Cir. 2015) .............................................................................. 2, 16

*BellSouth Telecommunications, Inc. v. Orangeburg*,
  522 S.E. 2d 804 (S.C. 1999) ............................................................................... 26, 27

*Bellsouth Telecommunications, LLC v. Cobb County*,
  802 S.E. 2d 686 (Ga. Ct. App. 2017) ...................................................................... 27

*Blackmon-Taylor v. Saks Fifth Ave., Inc.*,
  2014 WL 5106891 (D.S.C. Oct. 10, 2014) .............................................................. 16

*Brown v. County of Horry*,
  417 S.E. 2d 565 (S.C. 1992) ............................................................................... 26, 27

*C.R. Campbell Construction Co. v. Charleston*,
  481 S.E. 2d 437 (S.C. 1997) .................................................................................... 27

*Central Power & Light Co. v. City of San Juan*,
  962 S.W.2d 602 (Tex. App. 1998) .......................................................................... 11

*Chicanos Por Law Causa, Inc. v. Napolitano*,
    558 F.3d 856 (9th Cir. 2009) ......................................................................................... 25

*City of Chicago v. Allen Bradley Co.*,
    32 F.R.D. 448 (N.D. Ill. 1963) ........................................................................................ 9

*City of Gallup, New Mexico v. Hotels.com, L.P.*,
    No. 07-CV-0064 JEC/RLP, 2009 WL 9056102 (D.N.M. Jul. 7, 2009) ................................ 9, 11

*City of Rome, Georgia. v. Hotels.com, LP*,
    No. 4:05-CV-249-HLM, 2011 WL 13229684 (N.D. Ga. Mar. 21, 2011) ........................... 9, 11

*City of San Antonio v. Hotels.com*,
    No. SA-06-CA-381-OG, 2008 WL 2486043 (W.D. Tex. May 27, 2008) ................................. 9

*College Loan Corp. v. SLM Corp.*,
    396 F.3d 588 (4th Cir. 2005) ................................................................................. 22, 24, 25

*County of Monroe v. Priceline.com, Inc.*,
    265 F.R.D. 659 (S.D. Fl. 2010) .......................................................................................... 1, 9, 11

*Dallas County, Texas v. MERSCORP, Inc.*,
    No. 3:11-cv-02733-O, 2012 WL 6208385 (N.D. Tex. Dec. 13, 2012) ................................... 12

*Davis v. Greenville*,
    470 S.E. 2d 331 (S.C. 1977) .............................................................................................. 26

*DeGidio v. Crazy Horse Saloon & Restaurant., Inc.*,
    No. 4:13-cv-02136-BHH, 2017 WL 5624310 (D.S.C. Jan. 26, 2017) ................................... 15

*Droste v. Vert Capital Corp.*,
    No. 3:14-cv-467, 2015 WL 1526432 (E.D. Va. Apr. 2, 2015) .............................................. 15

*E.I. du Point de Nemours & Co. v. Kolon Industries, Inc.*,
    637 F.3d 435 (4th Cir. 2011). ............................................................................................ 17

*Edwards v. Goldsboro*,
    178 F.3d 231 (4th Cir. 1999) ....................................................................................... 16, 17

*English v. General Electric Co.*,
    497 U.S. 72 (1990) ............................................................................................................ 25

*Ferguson Fire & Fabrication, Inc. v. Preferred Fire Protection, L.L.C.*,
    762 S.E.2d 561 (S.C. 2014) .............................................................................................. 20

*General Dynamics Land Systems, Inc. v. Cline*,
    540 U.S. 581 (2004) .......................................................................................................... 21

*Gibson v. Confie Ins. Grp. Holdings, Inc.*,
    No. 2:16-CV-02872-DCN, 2017 WL 2936219 (D.S.C. July 10, 2017) ................................. 14

*Gray v. Hearst Commc'ns, Inc.*,
    No. 8:08-CV-01833-GRA, 2010 WL 11531121 (D.S.C. Feb. 1, 2010) ................................. 14

*Hamilton County Emergency Communications District v. BellSouth Telecommunications, LLC*,
    852 F.3d 521 (6th Cir. 2017) .............................................................................................. 8

iii

*Henderson v. Evans*,
   232 S.E. 2d 331 (S.C. 1977) ................................................................................ 23

*Hodges v. Rainey*,
   341 S.C. 79 (S.C. 2000) ..................................................................................... 19

*Holsey v. Armour & Co.*,
   743 F.2d 199 (4th Cir. 1984) ............................................................................. 15

*In re Automotive Parts Antitrust Litigation*,
   No. 2:14-cv-00106, 2015 U.S. Dist. LEXIS 176492 (E.D. Mich. Apr. 30, 2015) ................... 12

*J.K. Constuction, Inc. v. Western Carolina Regional Sewer Authority*,
   519 S.E. 2d 561 (S.C. 1999) ................................................................ 3, 26, 27

*Jennings v. Rodriguez*,
   138 S. Ct. 830 (2018) ........................................................................................ 23

*Johnson v. Flakeboard America Ltd.*,
   No. CA 4:11-2607-TLW-KDW, 2012 WL 2237004 (D.S.C. Mar. 26, 2012) ........................ 14

*Johnson v. Flakeboard America, Ltd.*,
   No. CIV.A. 4:11-2607-TLW, 2012 WL 2260917 (D.S.C. June 15, 2012) .............................. 14

*Johnson v. Shelby*,
   135 S. Ct. 346 (2014) ................................................................................. 14, 16

*Kane County, Utah v. United States*,
   137 Fed. Cl. 653, 657-58 (2018) ......................................................................... 9

*Kelley v. Norfolk & Western Railway Co.*,
   584 F.2d 34 (4th Cir. 1978) ............................................................................... 15

*Louers v. Lacy*,
   No. JKS-10-2292, 2011 WL 6152949 (D. Md. Dec. 8, 2011) ..................................... 15

*Madison County Communications District v. Bellsouth Telecommunications, Inc.*,
   Civil Action No. CV-06-S-1786-NE, 2009 WL 9087783 (N.D. Ala. Mar. 31, 2009) .......... 6, 27

*Mead v. Beaufort County*,
   796 S.E. 2d 165 (S.C. Ct. App. 2016) ............................................................... 26

*Mohsenzada v. Lee*,
   5 F. Supp. 3d 791 (E.D. Va. 2014) .............................................................. 20, 22

*Montgomery County v. Federal National Mortgage Association*,
   740 F.3d 914 (4th Cir. 2014) ..................................................................... 1, 9, 11

*Phone Recovery Services, LLC v. Qwest Corp.*,
   919 N.W.2d 315 (Minn. 2018) ........................................................................... 28

*Phone Recovery Services, LLC v. Verizon of New England, Inc.*,
   102 N.E. 2d 968 (Mass. 2018) ........................................................................... 28

*Priester v. Cromer*,
   736 S.E. 2d 249 (S.C. 2012) ............................................................................. 25

*Rabe v. United Airlines, Inc.*,
  636 F.3d 866 (7th Cir. 2011) ................................................................. 16

*Roman v. ESB, Inc.*,
  550 F.2d 1343 (4th Cir. 1976) ............................................................... 15

*Romig v. Pella Corp.*,
  Nos. 2:14-mn-00001-DCN, 2:14-cv-00433-DCN, 2016 WL 3125472 (D.S.C. June 3,
  2016) ....................................................................................................... 15

*State v. Pittman*,
  373 S.C. 527 (2007) ............................................................................... 23

*T-Mobile South, LLC v. Bonet*,
  85 So. 3d 963 (Ala. 2011) ..................................................................... 27

*Town of New Castle v. Yonkers Contracting Co., Inc.*,
  131 F.R.D. 38 (S.D.N.Y. 1990) ............................................................... 9

*Verizon v. FCC*,
  740 F.3d 623 (D.C. Cir. 2014) ............................................................... 21

*Whitt v. Seterus, Inc.*,
  No. CV 3:16-2422-MBS, 2017 WL 1020883 (D.S.C. Mar. 16, 2017) ....... 8

*Zak v. Chelsea Therapeutics v. Intern Ltd.*,
  780 F.3d 597 (4th Cir. 2015) ................................................................. 18

## STATUTES

47 U.S.C. § 615a-1(d) ................................................................................... 23

47 U.S.C. § 615a-1(f)(1) ......................................................................... 3, 22, 24

S.C. Code Ann. § 23-47-10 .................................................................... 1, 4, 11

S.C. Code Ann. § 23-47-40(A) ................................................................ 4, 22, 26

S.C. Code Ann. § 23-47-50(A) .......................................................... 5, 19, 22, 26

S.C. Code Ann. § 23-47-50(D) ....................................................................... 4

S.C. Code Ann. § 23-47-67(A) ............................................................ 21, 22, 26

S.C. Code Ann. § 27-47-67(B) ................................................................... 4, 6

## OTHER AUTHORITIES

ABA Commission on Ethics & Professional Responsibility, Formal Opinion 07-445
  (2007) .................................................................................................. 10

Aiken County Code § 2-181 ....................................................................... 10

Anderson County Code § 2-176 .................................................................. 10

Colleton County Code § 2.30.020(D) ........................................................... 10

Darlington County Code § 2-56 .................................................................. 10

Greenville Code § 2-221 ............................................................................................. 10

William Rubenstein et al., *Newberg on Class Actions* § 9:1 (5th ed. 2018).......................... 10, 11

William Rubenstein, et al., *Newberg on Class Actions* § 9:12 (5th Ed. 2018)............................. 10

## RULES

Federal Rules of Civil Procedure 11(1) ........................................................................ 13

Federal Rules of Civil Procedure 11(3) ........................................................................ 13

Federal Rules of Civil Procedure 12(b)(6).................................................................... 16

Plaintiffs, Dorchester County and the Town of Summerville (together, "Plaintiffs"), respond in opposition to Defendants' Motion to Strike the Class Allegations and Partial Motion to Dismiss.

## INTRODUCTION

The substantive counts in this Complaint are virtually identical to those in *Charleston v. AT&T Corp., et al.*, Case No. 2:17-cv-2534-RMG ("*Charleston*") and *Richland v. AT&T Corp., et al.*, Case No. 3:18-cv-1295-RMG ("*Richland*"). Here, however, Dorchester County and the Town of Summerville seek to represent a class of similarly situated governmental entities in South Carolina. This makes eminent sense. This Court's interpretation of South Carolina's 911 Act, S.C. Stat. §§ 23-47-10, *et seq.*, will apply equally to all unnamed class members. Moreover, Defendants treat 911 remittances the same (and under remit) for every class member. Defendants nonetheless move to strike the class allegations. They apparently contend that each class member should individually re-litigate these issues in courts throughout the state. This would be a tremendous waste of resources and lead to inconsistent rulings. Rule 23 class certification exists to prevent such nonsensical results, and thus, the Court should deny Defendants' Motion.

Defendants first assert writ large that local governments cannot be unnamed class members and that no court has ever certified such a class in South Carolina. Defendants are misinformed. Not only can this Court certify such a class, but recently it did in *Butts v. Federal Nat'l Mortgage Association*, Civil Action 9:12-cv-1912-RMG (D.S.C. Mar. 11, 2013), attached as Exhibit A (certifying a class of county officials responsible for collecting recording fees in "all South Carolina counties"), *aff'd Montgomery County v. Fed. Nat'l Mortgage Ass'n*, 740 F.3d 914, 919 (4th Cir. 2014) (affirming merits ruling). Plaintiffs have identified at least seven other recent instances of federal courts certifying similar classes. *See, e.g., Cty. of Monroe v. Priceline.com, Inc.*, 265 F.R.D. 659, 662, 672 (S.D. Fl. 2010) (certifying class of Florida counties). Ignoring this

precedent, Defendants point exclusively to *Ackal v. Centennial Beauregard Cellar L.L.C.* 700 F.3d 212 (5th Cir. 2012) and its progeny. *Ackal*, however, involved Louisiana-specific laws that imposed onerous restrictions on local governments hiring private counsel. No local ordinance here is even remotely analogous.

Defendants next prematurely challenge Rule 23(a) numerosity. This dispute should be addressed at class certification not Rule 12(b)(6), but it fails on the merits anyway. Defendants admit that there are at least 48 unnamed class members. It is practically black letter law that this number satisfies Rule 23(a). *See* Newberg, *infra*, § 3:11 ("joinder is generally deemed . . . . impracticable in classes with more than 40 members").

Setting aside class issues, Defendants should have answered the substantive allegations of the Complaint. This Court has already held that these very same allegations satisfy Rule 12(b)(6). *See Charleston*, ECF No. 86, *and Richland*, ECF No. 23. Instead, Defendants attack Plaintiffs' legal theories regarding the 911 Act's "50-Line cap" and "5-Line exception." This is procedurally inappropriate. These issues only affect damages. Rule 12(b)(6) addresses a failure to state a ***claim***. It does not "permit piecemeal dismissals of *parts* of claims . . . ." *BBL, Inc. v. Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (emphasis in original).

These arguments are also meritless. The parties' dispute over the 5-Line exception of the 911 Act is not ripe because it requires the Court to resolve multiple factual issues, and, if anyone is entitled to judgment on the 50-Line cap, it is Plaintiffs. Defendants insist on applying the 50-Line cap to Voice over Internet Protocol ("VoIP") services, but this is contrary to the 911 Act's plain language. The Act imposes "a VoIP 911 charge in ***an amount*** identical to ***the amount of the 911 charge*** imposed on each local exchange access facility pursuant to Section 23-47-40(A) and 23-47-50(A)." (emphasis added). The language is singular, yet Defendants want it to be plural

2

– i.e. "the total number" of 911 charge"s".  Defendants may not rewrite the 911 Act in this manner.  *See Abraham v. Palmetto Unified School Dist.*, 538 S.E. 2d 656, 663 (S.C. Ct. App. 2000) ("use of the plural 'scales' evidences an intention that teacher pay in the District should be based on two separate pay schedules . . .").

Nor do the cannons of constitutional avoidance or tax law bear on this dispute.  Federal Statute 47 U.S.C. § 615a-1(f)(1) provides that for VoIP services "the fee or charge may not exceed the amount of any such fee or charge applicable to the same class of subscribers to telecommunications services."  This language means only that the amount of the per unit 911 charge for VoIP may not be higher than that for exchange access service and it is not.  The statute does not govern the number of charges.  The 911 charge is also not a tax, as Defendants contend.  Plaintiffs hold remittances in a separate account and may use them only for 911 emergency funding.  Under well-established South Carolina law, these are the hallmarks of a service charge or fee, not a tax.  *See, e.g., J.K. Const., Inc. v. Western Carolina Regional Sewer Auth.*, 519 S.E. 2d 561, 564 (S.C. 1999).  In short, the Court should deny Defendants' Motion.

## FACTUAL ALLEGATIONS AND BACKGROUND

## I.     PROCEDURAL BACKGROUND

On April 2, 2018 the County of Charleston filed its First Amended Complaint.  *Charleston v. AT&T Corp., et al.*, Case No. 2:17-cv-2534-RMG.  *Charleston* ECF No. 64.  In a related case, the County of Richland filed its complaint on May 10, 2018.  *Richland v. AT&T Corp., et al.*, Case No. 3:18-cv-1295-RMG.  *Richland* ECF No. 1.  After considering Defendants' Joint Motions to Dismiss in both related cases, this Court denied all Defendants' Motions to Dismiss on July 17, 2018.  *Charleston* ECF No. 86, *Richland* ECF No. 23.  Here, Plaintiffs the County of Dorchester and the Town of Summerville filed their Complaint on October 25, 2018.  ECF No. 1.  On November 9, 2018 Defendants in both the Charleston and Richland County actions filed Joint

Motions for Judgment on the Pleadings (the "12(c) Motions") addressing the 50-Line cap and the 5-Line exception, but acknowledging that resolution of those issues would not result in the dismissal of any claims on the merits. *Charleston* ECF No. 134, *Richland* ECF No. 69. Plaintiffs in both related actions responded to those motions. *Charleston* ECF No. 142, *Richland* ECF No. 74. On January 7, 2019, Defendants in the present action filed a Joint Motion to Dismiss, mirroring in part the substantive arguments asserted in Defendants 12(c) Motions. ECF No. 15

## II.    SOUTH CAROLINA'S 911 SYSTEM AND SERVICE CHARGE

South Carolina law authorizes the Plaintiffs to establish, operate, and maintain 911 emergency systems for their citizens. ¶ 14; *see also* § 23-47-10, *et seq.* The 911 Center in Dorchester County is referred to as the "E911 Dispatch Center" and is managed and operated by the Dorchester County Sheriff's Office. ¶ 15. The 911 Center in the Town of Summerville is the "Summerville Emergency Communications Center" and is managed by the Summerville Police Department. ¶ 16.

To fund these services, South Carolina law authorizes the Plaintiffs to "impose a monthly 911 charge upon each local exchange access facility," § 23-47-40(A), and each "VoIP service line." § 27-47-67(B). Both Plaintiffs have adopted a monthly 911 charge. ¶¶ 23-24. Both ordinances track the state law. *Id.* The 911 unit charge for exchange access service and VoIP service in Dorchester County is $0.99 and in the Town of Summerville it is $0.93. *Id.* These charges are critical to funding emergency services. ¶ 19.

## III.    DEFENDANTS' OBLIGATIONS UNDER THE 911 STATUTE

The 911 Statute requires Defendants to bill, collect, and remit 911 charges from individuals and businesses alike. § 23-47-50(D) *and* § 23-47-67(B). Defendants must remit the 911 charges (less a two percent administrative fee) within forty-five (45) days. *Id.* The 911 Statute places this responsibility on Defendants alone. Plaintiffs cannot assess and collect 911 charges on their own

4

because they have "no accurate way to assess internally how many active channels or service lines each Defendant sells and services . . . ."  ¶ 58.  Thus, the Plaintiffs are and have always been completely dependent upon Defendants to assess and remit 911 charges correctly.  For years, however, each Defendant has failed to fully bill, collect, and remit 911 charges to the Plaintiffs for their business customers.  *See* ¶ 46.  The gravamen of Plaintiffs' Complaint is that Defendants improperly have failed to bill exchange access lines by the channel and VoIP service lines by the telephone number.  *Id.*

A.     **Exchange Access Facilities**

For non-VoIP service, South Carolina's statute assesses 911 charges on "exchange access facilities," which is the "access" or connection from the user's phone to the publicly switched telephone network ("PSTN").  ¶ 27.  Unlike individuals, businesses often have multiple telephones and telephone numbers, and thus, channels that access the PSTN and 911.  ¶ 36.  A variety of technologies make this possible.  ¶ 30.  Primary Rate Interface ("PRI"), for example, is a circuit that allows a business to make twenty-three simultaneous calls on a single line.  *Id.*  Of course, not all twenty-three channels are active at one time.  One PRI can support as many as 184 active, working telephone numbers.  ¶ 31.

PRI and other facilities "capable of simultaneously carrying multiple voice and data transmissions . . . ***must*** be billed a number of 911 charges equal to (a) the number of outward voice transmission paths activated on such a facility . . . ."  § 23-47-50(A) (emphasis added); *see also* ¶ 34.  For each PRI, Defendants are obligated to assess and remit no fewer than twenty-three 911 charges because that is the number active "voice transmission paths" it supports.  ¶ 36.  Defendants, however, assess and remit far fewer charges than the required one 911 charge per exchange access facility for their business customers.  ¶¶ 42-46.

5

### B.    VoIP Service Lines

Defendants also assess and remit incorrectly for VoIP "service lines."  ¶¶ 42-46.  VoIP divides calls into "data packets" and transfers them over a network such as the Internet or a business's private network.  ¶ 39.  Unlike a PRI, VoIP service lines are not physically limited to connecting twenty-three calls or any number for that matter.  ¶ 40.  The 911 Statute assesses a charge on "each VoIP service line."  ¶ 41; *see also* § 23-47-67(B).  Thus, it requires Defendants to assess and remit one 911 charge per telephone number that can access 911.  *Id.*  Defendants are also not assessing and remitting the appropriate amount of 911 charges for their business customers on VoIP service lines.  ¶¶ 42-45.

## IV.    HISTORY OF 911 LITIGATION

The Plaintiffs' Complaint does not exist in a vacuum.  Defendants have been named repeatedly in lawsuits alleging identical misconduct, including in two other lawsuits in South Carolina.[1]  *Supra* at [3].  The Madison County, Alabama Communications District filed one of the earliest such lawsuits in 2006 against Bellsouth.  *See Madison County Communications District v. Bellsouth Telecommunications, Inc.*, Civil Action No. CV-06-S-1786-NE, 2009 WL 9087783 (N.D. Ala. Mar. 31, 2009), attached as Exhibit B.  The parties ultimately settled the matter after the court adopted the plaintiff's interpretation of the law on summary judgment.  Order of Dismissal, 09-12355-GG (11th Cir. Nov. 9, 2009), attached as Exhibit C.

Elsewhere in Alabama, as well as in Pennsylvania, Georgia, and Tennessee, local governmental entities have also filed complaints against the telecommunication companies.  The chart below lists the non-South Carolina cases in which a motion to dismiss was decided.  The

---

[1] Relators in various states have also filed False Claims Act litigation addressing Defendants' misconduct.  Some of those actions are under seal and investigation.  Others have been unsealed and are at various stages of litigation.  The False Claims Act cases, however, present distinct threshold issues and are not substantively relevant at this stage.

relevant orders are all attached as Exhibit D.  Of these cases, only two trial courts granted motions

to dismiss, and both were reversed on appeal.

| Case Style | Motion to Dismiss Ruling |
|---|---|
| *Dothan/Houston County Communications District, Ozark-Dale County E-911, Inc. v. Centurytel of Alabama LLC, Qwest Communications Company LLC,* Case No. CV-2014-900042.00 (Ala. Cir. Ct. July 23, 2014) | Denying Motion to Dismiss |
| *Madison County Communications District, et al. v. ITC Deltacom, Inc., Deltacom LLC, Earthlink Business LLC,* Case No. CV-2014-904855.00 (Ala. Cir. Ct. April 27, 2016) | Denying Motion to Dismiss and Ordering Defendants to Answer |
| *Autauga Emergency Management Communication District v. Bellsouth Telecommunications, LLC,* Case No. 2:15-cv-00765-SGC, 2016 WL 5848854 (N.D. Ala. Oct. 6, 2016). | Denying Motion to Dismiss as to All Claims Including Fraud Claims |
| *Birmingham Emergency Communications District v. TW Telecom Holdings, Inc., et al.,* Civil Action No. 2:15-2455-AKK (N.D. Ala. Mar. 2, 2017) | Denying Motion to Dismiss as to All Counts Except Fraud/Misrepresentation Claims |
| *Birmingham Emergency Communications District v. TW Telecom Holdings, Inc., et al.,* Civil Action No. 2:15-01088-AKK (N.D. Ala. Mar. 3, 2017) | Denying Motion to Dismiss as to All Counts Except Fraud/Misrepresentation Claims |
| *Delaware County, Pennsylvania v. Verizon Pennsylvania, Inc., et al.,* Case No. 15-04830 (Penn. Ct. Comm. Pl. Nov. 4, 2015) | Denying Defendants' Preliminary Objection and Ordering Defendants to Answer |
| *County of Berks, Pennsylvania v. Verizon Pennsylvania, et al.,* Case No. 15-15867 (Penn. Ct. Comm. Pl. May 17, 2016) | Denying Preliminary Objection Ordering Defendants to Answer |
| *County of Chester, Pennsylvania v. Verizon Pennsylvania, Inc., et al.,* Case No. 2015-06910-MJ (Penn. Ct. Comm. Pl. July 1, 2016) | Denying Preliminary Objection and Ordering Defendants to Answer |
| *County of Dauphin, Pennsylvania v. Verizon Pennsylvania, et al.,* Case No. 2015-CV-5933 (Penn. Ct. Comm. Pl. Aug. 3, 2016) | Denying Preliminary Objections Ordering Defendants to Answer |
| *County of Butler, Pennsylvania v. Century Link Communications LLC,* Case No. 1506 C.D. 2016 | Reversing Trial Court's Order Dismissing Complaint |

| Case Style | Motion to Dismiss Ruling |
|---|---|
| (Comm. Ct. of Penn. App. Div. June 8, 2017) (on appeal to the Pennsylvania Supreme Court) [2] | |
| *Hamilton County Emergency Comm's Dist. v. BellSouth Telecommunications, LLC,* 852 F.3d 521 (6th Cir. 2017) | Reversing Trial Court's Order Dismissing Complaint and Grant of Summary Judgment |
| *Cobb County, Georgia and Gwinnett County, Georgia v. BellSouth Telecommunications LLC d/b/b AT&T Georgia*, Case No. 15-A-12873-4 (Ga. Sup. Ct. July 14, 2016), *aff'd in part, BellSouth Telecommunications LLC d/b/a AT&T Georgia v. Cobb County, Georgia, et al.* (Ga. Ct. App. June 15, 2017) | Denying Motion to Dismiss |

**ARGUMENT**

## I.     PLAINTIFFS' CLAIMS ARE PERFECTLY SUITED FOR CLASS TREATMENT

To succeed on their Motion to Strike, Defendants must show "that it will be *impossible* to certify the class[] alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove." *Adams v. Air Methods Corp.*, No. 3:15-CV-1683-TLW, 2016 WL 7115905, at *2 (D.S.C. Aug. 12, 2016) (emphasis in original) (internal quotation marks omitted); *see also Whitt v. Seterus, Inc.*, No. CV 3:16-2422-MBS, 2017 WL 1020883, at *2 (D.S.C. Mar. 16, 2017).   Because Defendants did not (and cannot) meet this burden, the Court should deny their Motion.

### A.     Courts regularly certify classes of local governments and no law prohibits such a class in South Carolina.

Defendants first claim private attorneys may not represent the interests of governmental entities as absent class members.  According to Defendants, "[n]o court (state or federal) has ever permitted class allegations to be asserted on behalf of the various forms of local governments in South Carolina."  (Defs.' Br. at 10.)  This is false.  In fact, this very Court recently certified a local

---

[2]  In the Butler County case the trial court dismissed the claims on grounds of primary jurisdiction, i.e., that only the Pennsylvania Emergency Management Agency could enforce Pennsylvania's 911 statute.  There is no primary jurisdiction issue in this case.

governmental class in *Butts v. Federal Nat'l Mortgage Association*, Civil Action 9:12-cv-1912-RMG (D.S.C. Mar. 11, 2013), attached as Exhibit A (certifying a class of county officials responsible for collecting recording fees in "all South Carolina counties").[3]  Many courts in other jurisdictions have also certified classes comprised of local governments.  *See, e.g.*, *Kane Cty., Ut. v. United States*, 137 Fed. Cl. 653, 657-58 (2018) (certifying class of "unit[s] of general local government"); *Monroe*, 265 F.R.D. at 662, 672 (certifying class of Florida counties); *City of Rome, Ga. v. Hotels.com, LP*, No. 4:05-CV-249-HLM, 2011 WL 13229684, at *3, 25 (N.D. Ga. Mar. 21, 2011) (certifying class of Georgia cities, counties, and other municipalities); *City of Gallup, N.M. v. Hotels.com, L.P.*, No. 07-CV-0064 JEC/RLP, 2009 WL 9056102, at *1 (D.N.M. Jul. 7, 2009) (certifying class of New Mexico "taxing authorities," i.e., municipalities and counties); *City of San Antonio v. Hotels.com*, No. SA-06-CA-381-OG, 2008 WL 2486043, at *4, 15 (W.D. Tex. May 27, 2008) (certifying state-wide class of Texas cities); *Town of New Castle v. Yonkers Contracting Co., Inc.*, 131 F.R.D. 38, 43-44 (S.D.N.Y. 1990) (certifying class of New York cities, towns, villages, local government agencies, and Westchester County); *see also City of Chicago v. Allen Bradley Co.*, 32 F.R.D. 448, 453 (N.D. Ill. 1963) (denying in part motion to strike class allegations in putative class action brought on behalf of municipalities).

Defendants ignore completely this weight of authority and argue that local ordinances limit the retention of private counsel, and thus, prevent class certification.  (Defs.' Br. at 13.)  This is a red herring.  First, the local ordinances Defendants cite do not explicitly address class certification at all, much less forbid it.  Rather, these ordinances merely create the position of county or town

---

[3] On appeal of the merits, the Fourth Circuit characterized the class as "all counties in South Carolina."  *Montgomery County*, 740 F.3d at 919.  This recognizes the reality that while Registrars of Deeds acted as class representatives, they did so in their capacity as county officials collecting funds that belong to the counties and on behalf of the counties.

attorney, vest those attorneys with authority to represent their respective governments, and (sometimes) set forth the requirements for how the government may retain private counsel. *See, e.g.*, Aiken Cty. Code § 2-181 (establishing office of county attorney); *id.* § 2-187 ("No officer, board, commission, committee or agency in the county . . . may *employ an attorney* other than the county attorney *or agree to pay for services out of public funds* without first obtaining the council's approval"); Colleton Cty. Code § 2.30.020(D) (noting that the "the county attorney . . . shall participate in any litigation involving the county and shall carry out any assignments delegated to him by council"). This is neither extraordinary nor relevant to the certification of the proposed class here.

Second, theses ordinances do not "grant *exclusive* authority to government attorneys to conduct *all* litigation" on behalf of the governmental entities, as Defendants contend. (Defs.' Br. at 15 (first emphasis added).) Many of the ordinances contain no mandatory procedure for retaining private counsel at all. *See, e.g.,* Anderson Cty. Code § 2-176 *et seq.*; Colleton Cty. Code § 2.30.020(D); Darlington Cty. Code § 2-56 *et seq.*; Greenville Code § 2-221 *et seq.* Even those that do, however, present no obstacle to class certification because being an unnamed class member does not require counties or towns to retain private counsel. That is precisely the point. Class actions are *representative* litigation in which "absent class members are not expected to do anything." *See* 1 William Rubenstein et al., *Newberg on Class Actions* § 9:1 (5th ed. 2018). An absent class member is not a party to the action. *See id.* § 9:12 ("courts generally *do not* treat absent class members as parties, *per se*"). In fact, "[a] client-lawyer relationship with a potential member of the class does not begin until the class has been certified and the time for opting out by a potential member of the class has expired." ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 07-445, at 3 (2007). It is enough that the local governments "sit back and do nothing,

10

secure in the knowledge that their interests are adequately represented . . . ."  Rubenstein, *supra*, § 9:1.  Thus, the local ordinances position on private counsel is no obstacle to certification.

Third, without citing any authority, Defendants argue that this case cannot be maintained as a class action because it involves "the core sovereign function of tax collection."  (Defs.' Br. at 12.)  As discussed in more detail on pages 25 – 28, the 911 Act imposes a service charge not a tax. *See* S.C. Code Ann. § 23-47-10 (defining "911 charge" as a "fee").  Even if it did, a class action against Defendants for unlawfully failing to collect taxes is proper.  Many of the class actions on behalf of governmental entities have involved enforcing those entities' taxing powers.  *See, e.g.*, *Montgomery Cty.*, 740 F.3d at 917 (unpaid taxes from mortgage servicers); *Rome*, 2011 WL 13229684 at *1 (excise tax revenue); *Monroe*, 265 F.R.D. at 662 (tourist development taxes); *Gallup*, 2009 WL 9056102 at *1 (taxes from the sale of hotel rooms); *San Antonio*, 2008 WL 2486043 at *1 (hotel occupancy taxes).  Moreover, the absent class members here will be permitted to opt-out of any Rule 23(b)(3) class.  This reality belies Defendants' feigned concerns about usurping the sovereign authority of the local governments.

In *Central Power & Light Co. v. City of San Juan*, for example, the trial court certified a class of municipalities.  On appeal the defendants argued that the certification improperly permitted the municipalities to delegate their governmental authority.  962 S.W.2d 602, 612 (Tex. App. 1998).  The appellate court rejected this argument, concluding that a "properly worded class certification notice sent to all governing authorities for each municipality . . . will insure the appropriate actions are taken in determining whether to participate in this litigation."  *Id.* at 613. The court recognized that each local government will "know from its charter, and other pertinent laws, what actions are necessary for the city to stay in or opt-out of this particular litigation."  *Id.* The same is true here, and that is why the proposed class is appropriate.

11

Defendants assert that *Ackal v. Centennial Beauregard Cellar L.L.C.* and its two progeny establish a *per se* rule that governmental entities may not participate in class actions. *See* 700 F.3d 212 (5th Cir. 2012); *Dallas County, Texas v. MERSCORP, Inc.*, No. 3:11-cv-02733-O, 2012 WL 6208385 (N.D. Tex. Dec. 13, 2012); *and In re Automotive Parts Antitrust Litig.*, No. 2:14-cv-00106, 2015 U.S. Dist. LEXIS 176492 (E.D. Mich. Apr. 30, 2015). There is no such rule and these cases do not establish one.

*Ackal* involved a class of governmental entities in Louisiana that entered into contracts with the defendants for cellular telephone services. *Ackal*, 700 F.3d at 213. On appeal, the defendants argued that certification was inappropriate because Louisiana law required the unnamed governmental entities to "satisfy various substantive criteria before they may retain private representation," and because those conditions were not satisfied prior to certification, the class was an impermissible "opt in" action. *Id.* The Fifth Circuit agreed. *Id.* at 219. The *Ackal* court based its conclusion on a specific and unique Louisiana law that strictly prohibited parishes from hiring private counsel unless: (1) a real necessity existed; (2) the governmental entity declared and memorialized that necessity by resolution; (3) the attorney general approved that resolution; and (4) the minutes of the governmental body were published. *Id.* at 218. Louisiana's Attorney General had noted that it was "unlawful for any governmental entity subject to the *ex officio* legal representation of the district attorney to retain or employ private counsel." *Id.* (internal quotation marks omitted).[4]

---

[4] The cases that follow *Ackal* are equally inapposite. *See Dallas Cty.*, 2012 WL 6208385 at *6; *In re Automotive Parts Antitrust Litig.*, No. 2:14-cv-00106, 2015 U.S. Dist. LEXIS 176492, at *169 (E.D. Mich. Apr. 30, 2015). The *Automotive Parts* case contains no meaningful discussion of the local ordinances at issue. *See generally id.* at *165-71. In *Dallas County*, the Texas state statutes, like those in *Ackal*, apparently imposed specific substantive requirements that do not exist here. *See Dallas Cty.*, 2012 WL 6208385 at *7-8 (listing requirements, including among others, a finding of substantial need for legal services; that those legal services cannot be adequately

South Carolina has no such statute, and the local ordinances at issue are nothing like those in Louisiana. The South Carolina ordinances also do not set forth any substantive process for seeking approval of the retention of private counsel, entering into an agreement with private counsel for representation, or paying private counsel. They certainly do not require a showing of necessity or any approval from the State's Attorney General. *Ackal* and its progeny do not apply.

**B.     Defendants' claim that Motley Rice does not have authority to represent the named Plaintiffs is frivolous.**

Finally, Defendants make a wholly baseless assertion regarding Motley Rice's authority to represent the named Plaintiffs. (*See* Defs.' Br. at 16.) This assertion is frivolous and designed only to harass. *See* Fed. R. Civ. P. 11(1) and (3) (prohibiting frivolous arguments that have no "evidentiary support" and will not have any after investigation). Before making this assertion, counsel for Defendants did not contact Motley Rice or otherwise gather evidence upon which to base their claim. Motley Rice is authorized to represent both named Plaintiffs. *See* Exhibit E, Decl. of John G. Frampton ¶ 3 ("Frampton Decl."); Exhibit F, Decl. of G.W. Parker ¶ 3 ("Parker Decl."). The named Plaintiffs employed the proper procedures to retain private counsel. *See* Exhibit E, Frampton Decl. ¶ 3; Exhibit F, Parker Decl. ¶ 3. The county attorney for Dorchester County has participated in and supervised this litigation and will continue to do so, as has the town attorney for Summerville. Exhibit E, Frampton Decl. ¶ 4; Exhibit F, Parker Decl. ¶ 4. Counsel has kept both Dorchester and Summerville appropriately apprised of the litigation. *See* Exhibit E, Frampton Decl. ¶ 4; Exhibit F, Parker Decl. ¶ 4. Although the town attorney for the Town of Summerville, G.W. Parker, has not yet filed an appearance in this action, he will do so. *See* Exhibit F, Parker Decl. ¶ 4. In other words, Defendants' claim has no basis in fact.

---

performed by the county attorneys; and that the services cannot reasonably be obtained from attorneys in private practice for hourly fees).

**C.    Defendants' arguments about numerosity are premature and wrong.**

Defendants next argue that the proposed class is not sufficiently numerous.  (Defs.' Br. at 19.)  This argument is premature.  Courts "consistently" deny motions to strike class allegations because they "should not be addressed at the pleading stage, before plaintiff has had full opportunity for discovery . . . ."  *Alig v. Quicken Loans Inc.*, No. 5:12-CV-114, 2015 WL 13636655, at *3 (N.D.W. Va. Oct. 15, 2015).  Courts in this district have noted that because class certification involves factual and legal questions that require development, "a decision denying class status by striking class allegations at the pleading stage is inappropriate." *Gibson v. Confie Ins. Grp. Holdings, Inc.*, No. 2:16-CV-02872-DCN, 2017 WL 2936219, at *12 (D.S.C. July 10, 2017); *see also Johnson v. Flakeboard Am. Ltd.*, No. CA 4:11-2607-TLW-KDW, 2012 WL 2237004, at *7 (D.S.C. Mar. 26, 2012) (denying the defendant's motion to strike class allegations), *report and recommendation adopted*, No. CIV.A. 4:11-2607-TLW, 2012 WL 2260917 (D.S.C. June 15, 2012).

Despite this, Defendants take an early shot at the class based on only one factor, numerosity.  Rule 23(a)'s numerosity requirement is satisfied where a class is "so numerous that joinder of all members is impracticable."  *Gray v. Hearst Commc'ns, Inc.*, No. 8:08-CV-01833-GRA, 2010 WL 11531121, at *10 (D.S.C. Feb. 1, 2010), *aff'd*, 444 F. App'x 698 (4th Cir. 2011) (internal quotation marks omitted).  The class easily satisfies Rule 23(a)'s numerosity requirement.  ¶ 61.  Plaintiffs note that South Carolina has forty-six counties and seventy PSAPs within its borders, and that Defendants provide telecommunication services to at least forty-one, if not all, of South Carolina's counties.  (*Id.*) Defendants acknowledge that there are at least 48 distinct entities to which they remits 911 fees.  (Defs.' Br. at 19.)  Thus, the class is between 48 and 70 entities.

This is more than enough to satisfy Rule 23(a), and it is certainly not impossible to certify a class of this size. The Fourth Circuit has affirmed certification of classes that contain at least forty members. *See, e.g., Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984) (affirming district court's certification of a class of between forty-six and sixty members). And courts within the circuit have routinely observed that a class of forty satisfies numerosity. *See, e.g.*, *DeGidio v. Crazy Horse Saloon & Rest., Inc.*, No. 4:13-cv-02136-BHH, 2017 WL 5624310, at *9 (D.S.C. Jan. 26, 2017), *aff'd and remanded*, 800 F.3d 135 (4th Cir. 2018); *Romig v. Pella Corp.*, Nos. 2:14-mn-00001-DCN, 2:14-cv-00433-DCN, 2016 WL 3125472, at *5 (D.S.C. June 3, 2016); *Droste v. Vert Capital Corp.*, No. 3:14-cv-467, 2015 WL 1526432, at *4 (E.D. Va. Apr. 2, 2015); *Louers v. Lacy*, No. JKS-10-2292, 2011 WL 6152949, at *3 (D. Md. Dec. 8, 2011). This principal is so well-established that it is basically black letter law, *see* Rubenstein, *supra*, § 3:11 ("joinder is generally deemed practicable in classes with fewer than 20 members and impracticable in classes with more than 40 members"), which begs the question why Defendants have made this argument at all.

Defendants' cited cases do nothing to change the outcome of this analysis. *Roman v. ESB, Inc.*, involved a class in which all but eleven members of the proposed class were named as individual plaintiffs. 550 F.2d 1343, 1348-49 (4th Cir. 1976). Therefore, joinder of those not already in the action was not impracticable. *See id.* In *Kelley v. Norfolk & W. Ry. Co.*, 584 F.2d 34, 35-36 (4th Cir. 1978), the Fourth Circuit held that joinder of a class with twenty-five members at best was not impracticable, as all potential class members worked at the same facility and lived in the same area. *Id.* That is also not the case here. Thus, Court should deny Defendants' Motion to Strike the class allegations.

## II.     RULE 12(B)(6) ADDRESSES THE SUFFICIENY OF CLAIMS NOT THE VALIDITY OF LEGAL THEORIES

Defendants also move to dismiss certain elements of Plaintiffs' substantive claims.  This is not appropriate under Rule 12(b)(6).  Rule 12(b)(6) permits Defendants to move to dismiss a "claim," but does not "resolve contests surrounding the facts [or] the merits of a claim . . . ." *Edwards v. Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *accord Blackmon-Taylor v. Saks Fifth Ave., Inc.*, 2014 WL 5106891, at *2 (D.S.C. Oct. 10, 2014).  If Plaintiffs' claims are "plausible" they survive.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Supreme Court has recently re-affirmed the well-established principle that Rule 12(b)(6) addresses ***factual*** allegations and not ***legal theories***.  *See Johnson v. Shelby*, 135 S. Ct. 346 (2014) (reversing dismissal based on "imperfect statement of the legal theory supporting the claim asserted"); *see also* Wright & Miller, 58 Fed. Prac. & Proc. Civ. § 1357 (3d Ed.) ("[T]he complaint should not be dismissed merely because the plaintiff's allegations do not support the legal theory he or she intends to proceed on.").

The Court has already ruled that identical factual allegations in the *Charleston* and *Richland* actions state plausible claims.  *See supra* at 3.  Since the substantive allegations in this Complaint are all but identical, this should settle the matter.  Defendants nevertheless attack Plaintiffs' "legal theories."  Defs' Mot. at 5.  But this will not dispose of any claims.  *See Rabe v. United Airlines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011) ("A complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error.").  Defendants admit as much in the Reply in support of their Rule 12(c) Motion.  *Charleston*, ECF No. 145 at 2 ("Defendants are not seeking a ruling on the merits of their factual claims that they complied with the statute properly interpreted.").  Rule 12(b)(6) does not "permit piecemeal dismissals of *parts* of claims . . . ."  *BBL, Inc.*, 809 F.3d at 325 (emphasis in original).  "Rule 12(b)(6) speaks of the dismissal of claims, not legal theories."  *Andersen v. Village of Glenview*, No. 17-CV-05761, 2018

WL 6192171, at *5 (N.D. Ill. Nov. 28, 2018) (slip copy). For this reason alone, the Court should deny Defendants' Motion to Dismiss.

## III.    THE 5-LINE EXCEPTION RAISES MULTIPLE FACTUAL ISSUES

Defendants also seek to dismiss Plaintiffs' claims "insofar as" Plaintiffs' interpretation of the 911 Act's 5-Line exception differs from that of Defendants. Defs' Mot. at 22 n. 19. The Court can quickly dispense with these arguments. Interpretation and application of the 5-Line exception raises at least the following issues of disputed material fact:

- The meaning of "fractional PRI;"
- The meaning of "multiplex services;"
- Whether the five-line exception applies only to multiplex service, only to fractional PRI or both;
- What is means for a customer to be able to modify the number of outbound voice transmission paths without the "assistance" of the carrier;
- What constitutes an "activated outward voice transmission path;" and
- Whether a particular service is local exchange access service rather than interconnected VoIP service.

The Court cannot resolve these disputes under Rule 12(b)(6). *See Edwards*, 178 F.3d at 244.

### A.    There is a factual dispute over the meaning of "multiplex" and "fractional PRI" and how the 911 Act applies to these terms.

Plaintiffs allege that the 5-line exception applies only rarely and when it does most frequently applies to "fractional PRI not delivered by a broadband connection." ¶ 37. The Court must accept this allegation as true because Plaintiffs are the non-moving parties. *E.I. du Point de Nemours & Co. v. Kolon Indust., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). Defendants, on the other hand, claim that the 5-line exception applies to "multiplex" customers. Defs' Mot. at 21. Resolving the dispute over the meaning of "multiplex services" and "fractional PRI" and how the 911 Act applies to both is not appropriate under Rule 12(b)(6) prior to discovery. *See id.* at 449.

The term "multiplex" is essential to Defendants' Motion, yet it is not part of Plaintiffs' pleadings.  It not used or defined in the 911 Act or its legislative history, and Defendants cite no publicly available source that definitively establishes the meaning of multiplex services as applied to the 5-Line exception.  Indeed, as noted in the response to Defendants' Joint Motion for Judgment on the Pleadings in the *Charleston* and *Richland* actions, there is no commonly accepted meaning of the term "multiplex" services.  Charleston Pl's Opp. to Defs' 12(c) Motion at 15.  It is black letter law that materials that are not attached to, referenced in, or integral to the pleadings cannot be considered under Rule 12(b)(6).  *See Zak v. Chelsea Therapeutics v. Intern Ltd.*,  780 F.3d 597, 607 (4th Cir. 2015) (finding that district court inappropriately considered Securities and Exchange Commission filings that were not referenced in or integral to the pleadings).  It is equally true that bare assertions in briefs cannot form the basis for dismissal.  *See Kolon*, 637 F.3d at 449 ("statements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion"); *accord Babchuck v. Indiana Univ. Health, Inc.*, 299 F.R.D. 591, 594 (S.D. Ind. 2014) (refusing to consider evidence raised in briefs not pleadings under Rule 12(b)(6)).  The Court should deny Defendants' Rule 12(b)(6) Motion for this reason alone.

## B.     There is a factual dispute about what it means to activate "outward voice transmission paths" with or without the "assistance of the service supplier."

There is also a factual dispute over the meaning of the phrases "without the assistance of the service supplier" and "activated outward voice transmission paths."  Defs' Mot. at 22-25. Defendants claim that the 5-line exception applies where the customer needs no help from the carrier altering the use of the "B-channels" on a T1 from "outbound service" to "data or inbound-only voice service."  *Id.* at 23.  Plaintiffs' pleadings do not invoke these issues, and the 911 Act does not define "outbound service" or "data or inbound only voice service."  Nor do the pleadings or the Act state what it means to have "assistance" of the carrier or what constitutes an "activated

18

outward voice transmission path." Once again, these phrases do not have commonly accepted industry meanings and Defendants' interpretations are not the only interpretations. *See* Charleston Pl's Opp. to Defs' 12(c) Motion at 15 (explaining alternative interpretations of these phrases). Because these issues require discovery, the Court should deny Defendants' Motion.

## IV.    THE 50-LINE CAP DOES NOT APPLY TO VOIP SERVICES

### A.    "The amount of" the 911 charge, <u>singular</u>, is not the same as "total number of 911 charges," <u>plural</u>.

Defendants also challenge Plaintiffs' interpretation of the 50-Line cap. They first claim that the 50-Line cap applies to VoIP service lines, just as it applies to exchange access facilities. Defs' Mot. at 26. This is contrary to the plain language of the 911 Act. Section 23-47-67(A) of the 911 Act imposes "a VoIP 911 charge in ___***an amount***___ identical to ***the amount of <u>the</u> 911 charge*** imposed on each local exchange access facility pursuant to Section 23-47-40(A) and 23-47-50(A)." (emphasis added). The Act's language is singular. It speaks of "the amount of the 911 charge" established by § 23-47-50(A), not the "total number of 911 charges" or the "total amount of the 911 charges." Section 23-47-67(A) therefore incorporates only "***the amount of the 911 charge***" from § 23-47-50(A), and nothing more. In direct contrast, when the Act describes the 50-Line cap, it uses the plural. Section 23-47-50(A) states that the County may charge "up to a maximum of fifty ***local exchange lines*** per account." (emphasis added). The Act similarly states that "***[t]he total number of 911 charges*** remains subject to the maximum of fifty 911 charges per account set forth above." § 23-47-50(A) (emphasis added). The Court must give these words their "literal meaning." *Adkins v. Varne*, 439 S.E.2d 432, 824 (S.C. 1993); *Hodges v. Rainey*, 341 S.C. 79, 87 (S.C. 2000) ("[A] court cannot rewrite the statute and inject matters into it which are not in the legislature's language"). Defendants may not convert the singular into plural. *See, e.g.*, *Abraham*, 538 S.E.2d at 663 ("use of the plural 'scales' evidences an intention that teacher pay in

19

the District should be based on two separate pay schedules . . . ."); *Armijo v. FedEx Ground Package Sys. Inc.*, 285 F. Supp. 3d 1209, 1224 (D.N.M. 2018) ("The Court must assume the legislature chose this plural form advisedly, and to assume otherwise injects unnecessary ambiguity into the statute." (internal citations and quotations omitted)).

The analysis in *Mohsenzada v. Lee*, 5 F. Supp. 3d 791 (E.D. Va. 2014), is instructive. In *Mohsenzada*, the plaintiff asserted that delays in the review of his first patent extended the life of his second and third patents. *Id.* at 799. The court rejected this argument because the key phrase in the statute at issue was singular – it provided an extension only where "the issue of ***an original patent*** is delayed . . . ." *Id.* at 803 (emphasis in original). Likewise, the statute referred to "***an application***" and provided extensions for "the term of ***the patent*** . . . ." *Id.* (emphasis in original). The court found this singular language, as opposed to plaintiff's unsupported pluralized reading of the statute, was intentional and dispositive. "[T]he plain language of the PTA Statute applies to only one patent . . . as indicated by the use of one-to-one correspondence for the terms 'an original patent,' 'an application' and 'the patent.'" *Id.* at 803. The court explained that:

> The . . . Statute manifests this intent by using the singular rather than the plural each time it refers to an issued patent and an application. If Congress had intended for a single application to potentially yield PTA on multiple patents, it would have said, "the term of ***the patents*** shall be extended 1 day." It did not.

*Id.* at 804. The court recognized that "the singular should remain singular" because elsewhere in the statute, Congress used the plural. *Id.* "[W]here Congress intends for a rule to encompass the plural, it knows how to do so." *Id.* This same reasoning applies with equal force in the present case. If the South Carolina Legislature wanted to say "total number of 911 charges," it certainly knew how to convey that, but it did not. *Accord Ferguson Fire & Fabrication, Inc. v. Preferred Fire Prot., L.L.C.*, 762 S.E.2d 561, 567 (S.C. 2014) (reiterating that courts "'are not at liberty . . .

to alter the plain language of [a] statute by adding words which the Legislature saw fit not to include'"(alteration in original)).

Ignoring the plain language of the statute, Defendants claim that the charge the 911 Act "imposes on the fifty-first (and each subsequent) local exchange access facility on a customer's account is $0." Defs' Mot. at 26. To reach this conclusion, Defendants' interweave and selectively quote from four different sections of the 911 Act. *Id.* Such a twisted reading is contrary to settled principles of statutory construction. Words "must be read in context [because] a phrase gathers meaning from the words around it." *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 596 (2004) (citation and internal quotation marks omitted). It is "basic" that the Court should not "resort to a subtle or forced construction which limits or expands the statute's operation." *Adkins*, 439 S.E. 2d at 824. Nor have Defendants identified any case law to support this position. They point to *Verizon v. FCC*, 740 F.3d 623, 657 (D.C. Cir. 2014), but that case does not address a "cap" or a monthly service charge of any type. It certainly does not state that a cap sets the price of future service charges at $0.[5]

Moreover, reading the phrase "each VoIP service line," § 23-47-67(A) out of order, as Defendants do, is not appropriate. Sections 23-47-67(A) and (B) are straightforward when read in the order in which they were written and in context with the surrounding passages. Section 23-47-67(A) sets the amount of the 911 charges in "an amount identical to the amount of the 911 charge imposed on each local exchange access facility pursuant to Section 23-47-40(A) and 23-47-50(A)." Those amounts are $0.99 and $0.93, respectively, in Dorchester and Summerville. *See* ¶¶ 23-24. Section 23-47-67(B) requires Defendants to "collect the VoIP 911 charge established

---

[5] Verizon addressed net neutrality and whether the Federal Communications Commission had wrongly and discriminatorily regulated broadband service providers in the same manner that it would common carriers.

in subsection (A) on each VoIP service line."  This plain language is consistent with Plaintiffs' interpretation – that the carrier must collect the 911 charge for all VoIP service lines.  There is no reference to a cap.[6]

Finally, Defendants point to § 23-47-40(A), which states that "*[t]he 911 charge* must be uniform and may not vary according to the type of local exchange access facility used."  (emphasis added.)  Once again, the plain language is singular and refers to "the 911 charge."  It says nothing about the 50-Line cap or the "total number of 911 charges" that apply.  The first sentence of § 23-47-40(A) makes this clear when it says that "[t]he local government is authorized to adopt an ordinance to impose *a monthly 911 charge* upon each local exchange access facility . . . ." (emphasis added).  "[T]he singular should remain singular . . . ." *Mohsenzada*, 5 F. Supp. 3d at 804.

### B.    Plaintiffs' interpretation of the 911 Act presents no preemption issue.

According to Defendants, if the Court does not apply the 50-Line cap to VoIP, then the 911 Act will conflict with 47 U.S.C. § 615a-1(f)(1).[7]  Because "a possible constitutional construction

---

[6] If as Defendants claim, "each" means "every one," this only bolsters Plaintiffs' position.  Defs' Mot. at 26.  Read in this manner, § 23-47-67(A) requires Defendants to "collect the VoIP 911 charge established in subsection (A) on **[every]** VoIP service line," which is precisely what Plaintiffs contend they should do.  (emphasis added).  There is similar language in § 23-47-40(A) which assesses a charge on "each exchange access facility" and refers to traditional individual telephone service.  That language is followed by § 23-47-50(A), which provides the 50-Line cap in instances where an exchange access facility can carry more than one call.  No such cap language follows in the section addressing VoIP service lines, which is why it does not apply.

[7] Defendants refer to "the express preemptive scope of § 615a-1(f)(1)."  Defs' Mot. at 29.  Whether this was intentional or inadvertent, there is no express preemption clause at issue here.  Express preemption exists only where the statute explicitly states a specific preemptive scope.  *See College Loan Corp.*, 396 F.3d at 596 ("The doctrine of express preemption has no application here (as the parties agree), because he HEA makes no mention of preempting state tort and contract claims.").  In fact, here, the federal law at issue here has a savings clause stating it does not have preemptive effect.  "Nothing in this section is intended to alter the authority of State commissions or other State or local agencies with jurisdiction over emergency communications, provided that the

must prevail over an unconstitutional interpretation," they claim the cap must apply. *Henderson v. Evans*, 232 S.E. 2d 331, 333-34 (S.C. 1977). The doctrine of constitutional avoidance only applies when one of two plausible interpretations "raises serious constitutional doubts." *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018) (emphasis added). Because Defendants' interpretation is contrary to plain language, there are no serious constitutional doubts. *See State v. Pittman*, 373 S.C. 527, 562 (2007) (declining to apply the cannon of constitutional avoidance where the statute had only one meaning).

However, even if the doctrine did apply, it only supports Plaintiffs' position. *See Henderson*, 232 S.E. 2d at 333-34 (adopting plain language interpretation that also avoided constitutional issue). Defendants' entire argument requires the Court to construe "the amount of any such fee or charge," singular to mean "the total number or quantity" of fees or charges, plural. Defs' Mot. at 29 (quoting Webster's Third International Dictionary 72 (2002)). This position fails for at least three reasons.

First, the plain words of § 615a-1(f)(1) are simply not what Defendants claim they are. Section 615a-1(f)(1) in its entirety, provides the following:

> Nothing in this Act, the Communications Act of 1934 (47 U.S.C. 151 et seq.), the New and Emerging Technologies 911 Improvement Act of 2008, or any Commission regulation or order shall prevent the imposition and collection of a fee or charge applicable to commercial mobile services or IP-enabled voice services specifically designated by a State, political subdivision thereof, Indian tribe, or village or regional corporation serving a region established pursuant to the Alaska Native Claims Settlement Act, as amended (85 Stat. 688) [43 U.S.C.A. § 15601 et seq.] for the support or implementation of 9-1-1 or enhanced 9-1-1 services, provided that the fee or charge is obligated or expended only in support of 9-1-1 and enhanced 9-1-1 services, or enhancements of such services, as specified in the provision of State or local law adopting the fee or charge. For each class of subscribers to IP-enabled voice services, ***the fee or charge*** may not exceed the

---

exercise of such authority is not inconsistent with Federal law or Commission requirements." 47 U.S.C. § 615a-1(d).

**amount of any such fee or charge** applicable to the same class of subscribers to **telecommunications services**.

§ 615a-1(f)(1) (emphasis added).  The last section establishes that the amount – i.e., the unit price – of the 911 service charge for VoIP may not be higher than the amount of the 911 service charge for exchange access service.

Here, there is no conflict between the 911 Act and § 615a-1(f)(1) because the amount of the 911 service charge for VoIP and exchange access service is the same.  Defendants contend otherwise, but only because they focus on the wrong word: "amount."  In § 615a-1(f)(1), "amount" modifies "fee or charge," and both words are singular.  Defendants' interpretation expands the definition of "amount" and would only make sense if "fee or charge" were plural.  Because they are not plural, Defendants' interpretation fails.  *See Armijo*, 285 F. Supp. 3d at 1224 (assuming that the legislature "chose this plural form advisedly").

Second, Defendants' interpretation would lead to absurd results.  Read as Defendants suggest, § 615a-1(f)(1) requires that the total number of 911 fees or charges for VoIP service line "not exceed the [total number] of any such fee[s] or charge[s] applicable to the same class of subscribers to telecommunications services."  Compare Defs' Mot. at 29, *with* § 615a-1(f)(1).  This is impossible.  Many, if not most, small to medium business customers have multi-line service but do not meet or exceed the 50-Line cap.  For those VoIP customers the "total number of" 911 charges can and will exceed the "total number of" 911 charges for exchange access customers in many instances because the "total number of" 911 charges varies with the number of phone lines purchased.  Under Defendants' reading, this conflicts with § 615a-1(f)(1).

Finally, Defendants have not proven, as they must, that Plaintiffs' interpretation would frustrate a significant purpose or objective of Congress.  There is strong presumption against preemption.  *College Loan Corp. v. SLM Corp.*, 396 F.3d 588, 596 (4th Cir. 2005).  Conflict

preemption exists if (1) there is a direct conflict between state and federal law (i.e., it is impossible to comply with both) or (2) an implied conflict, i.e., state law stands as an obstacle to the "purposes and objectives of Congress." *Id.* Defendants bear the burden of proving that Plaintiffs' interpretation of the 911 Act conflicts with a significant Congressional purpose. *See Priester v. Cromer*, 736 S.E. 2d 249, 254 (S.C. 2012) ("[T]he party claiming preemption has the burden of proving that an agency deliberately sought a variety of means to achieve a 'significant' federal purpose.").

As explained above, there is no direct conflict. "Pre-emption is ordinarily not to be implied absent an actual conflict . . . ." *English v. Gen. Elect. Co.*, 497 U.S. 72, 90 (1990) (quotations omitted). Nor have Defendants proved an implied conflict. Conflict preemption arises from "an actual conflict, not merely a hypothetical or potential conflict." *Chicanos Por Law Causa, Inc. v. Napolitano*, 558 F.3d 856, 863 (9th Cir. 2009). Yet Defendants present only hypotheticals. They claim that VoIP subscribers would be at a disadvantage as compared to exchange access subscribers without the 50-Line cap. There is, however, no record evidence on this issue. Defs' Mot. at 28-30. Nor is there any evidence of this issue in the pleadings – the only relevant documents under Rule 12(b)(6). Thus, Defendants' position fails. *See Warren*, 848 F.3d 590, 599 (4th Cir. 2017) (rejecting hypothetical basis for obstacle preemption); *English*, 497 U.S. at 90 (holding that potential conflict was "too speculative a basis on which to rest a finding of pre-emption").

### C.    The 911 "charge" is not a tax.

Defendants' final argument concerning the 50-Line cap is that the 911 "charge" is a "tax," and as such, the Court must resolve statutory ambiguities in favor of the taxpayers. Defs' Mot. at 30. This argument fails because, as discussed *supra*, there is no statutory ambiguity that needs resolving. More importantly, the 911 "charge" is not a tax at all. It is a service charge and therefore

the tax canon Defendants' wish to apply is irrelevant. *See Mead v. Beaufort County*, 796 S.E. 2d 165, 173 (S.C. Ct. App. 2016) (declining to apply canons of construction to tax statute where there was "no ambiguity"); *Davis v. Greenville*, 470 S.E. 2d 331, 333 (S.C. 1977) (recognizing that when the language is plain "it becomes the duty of the court to apply it literally").

The Act refers to the "911 charge" not the "911 tax." *See, e.g.*, §§ 23-47-40(A), 23-47-50(A) ("911 charge"), 23-47-67(A) ("911 charge"). Although the terminology employed in the statute alone is not dispositive, the Legislature's choice not to use the word tax "must be given judicial respect." *See Brown v. County of Horry*, 417 S.E. 2d 565, 567 (S.C. 1992). A tax is a general contribution for the "the support of government," whereas a service charge is a "charge for a particular service." *BellSouth Telecomm'ns, Inc. v. Orangeburg*, 522 S.E. 2d 804, 806 (S.C. 1999); *Brown v. County of Horry*, 417 S.E. 2d 565, 568 (S.C. 1992). The government collects and allocates a service charge only for its allocated purpose. *See Brown*, 417 S.E. 2d at 568. Placement of the charges in a separate account apart from the general fund is strong evidence that the charge is not a tax. *See J.K. Const.*, 519 S.E. 2d at 564.

The 911 charge squarely meets these criteria. Plaintiffs collect the 911 charge from subscribers who live in their geographic region and receive the 911 service, and the Act mandates that Plaintiffs spend the funds only for establishing and maintaining 911 services. *See* §§ 23-47-40(A)-(C). Plaintiffs both keep their 911 service charges in separate accounts designated for these purposes. *See* Dorchester Cty Ord. § 12-22 (requiring the County finance director to "[e]stablish unique and separate revenue and expense accounts through which to receive, account, and disburse funds for E911"), and *Summerville* 911 Ordinance § 2 C (same). South Carolina courts have consistently found that similar levies are not taxes. *See, e.g., J.K Const.*, 519 S.E. 2d at 564 (finding that sewer service charge was not a tax where it was not deposited in general fund); *Brown*,

26

417 S.E. 2d at 568 (finding that charge on all cars registered in county was not a tax when dedicated only to road maintenance); *C.R. Campbell Const. Co. v. Charleston*, 481 S.E. 2d 437, 438 (S.C. 1997) (finding that real estate transfer fee used to upgrade public parks was not a tax).

In contrast to the above cases, there is scant legal support for Defendants' tax argument. The one South Carolina case they cite concluded the levy at issue was a charge not a tax. *See Bellsouth v. Orangeburg*, 522 S.E. 2d at 809. Nor is it relevant that tourists and travelers receive the benefit of 911 service while visiting the Plaintiffs' jurisdictions. Defs. Mot. at 12. South Carolina's Supreme Court has consistently recognized as much. "A charge does not become a tax merely because the general public obtains a benefit." *Brown*, 417 S.E. 2d at 568; *accord J.K. Const.*, Inc., 519 S.E. 2d at 564.

Defendants also claim that the "vast majority" of courts addressing 911 charges agree with their position. Defs' Mot. at 12 n. 13. This is simply not true. In *Madison County Communications District v. Bellsouth Telecomm'ns, Inc.*, the court reasoned that "[b]ecause the E911 charge is based on provision of telephone service, and is used to fund a specific service (911 service), the charge is not a revenue-raising measure and, therefore, not a tax." Civ. Action No. CV–06–S–1786–NE, 2009 WL 9087783, at *10 (N.D. Ala. Mar. 31, 2009). The Alabama Supreme Court later agreed. *See T-Mobile South, LLC v. Bonet*, 85 So. 3d 963, 984-85 (Ala. 2011). Since then, courts in Georgia and Pennsylvania have found that 911 charges are not taxes.[8] The cases

---

[8] In Georgia, a trial court found that the 911 charge was a fee not a tax. *See Bellsouth Telecomm'ns, LLC v. Cobb County*, 802 S.E. 2d 686, 693 (Ga. Ct. App. 2017). The Georgia Court of Appeals found that fact issues existed that prevented a decision on this issue at the motion to dismiss stage. *See id.* at 694. The issue is currently on appeal before the Georgia Supreme Court. A Pennsylvania trial court ruled that the 911 charge was not a tax in that state. *See Phone Recovery Services LLC v. Verizon Pennsylvania, Inc.*, No. GD-14-021671 at 13 (Penn. Com. Pl. April 21, 2016), attached as Exhibit G.

Defendants cite in their favor, Defs' Mot. at 12 n.13, were decided on jurisdiction-specific grounds. For example, in *Phone Recovery Services, LLC v. Qwest Corp.*, the Minnesota court followed a specific state statute addressing the difference between service charges and taxes. 919 N.W.2d 315, 323–24 (Minn. 2018). South Carolina has no such statute and follows a different common law analysis. *See also, e.g.*, *Phone Recovery Servs., LLC v. Verizon of New Eng., Inc.*, 2015 8331983, at *5 (Mass. Super Ct. Oct. 27, 2015), *affd' on other grounds*, 102 N.E. 2d 968 (Mass. 2018) (recognizing that under Massachusetts law, fees are optional unlike taxes).

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion.

Dated:  February 5, 2019                        Respectfully submitted,

                                        */s/ Lance V. Oliver*
                                        Marlon E. Kimpson
                                        Lance V. Oliver
                                        Max Gruetzmacher
                                        Annie E. Kouba
                                        MOTLEY RICE LLC
                                        28 Bridgeside Blvd.
                                        Mt. Pleasant, SC 29464
                                        (T) 843-216-9000
                                        (F) 843-216-9450
                                        mkimpson@motleyrice.com
                                        loliver@motleyrice.com
                                        mgruetzmacher@motleyrice.com
                                        akouba@motleyrice.com

                                        *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 5, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

/s/ *Lance V. Oliver*
Lance V. Oliver