**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

COUNTY OF DORCHESTER,
SOUTH CAROLINA,

*and*

TOWN OF SUMMERVILLE,
SOUTH CAROLINA,                                    Case No. 2:18-cv-2890-RMG

        Plaintiffs,

          v.

AT&T CORP. and BELLSOUTH
TELECOMMUNICATIONS, LLC,

        Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
TO STRIKE THE CLASS ALLEGATIONS AND PARTIAL MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 2

I.  THE COURT SHOULD STRIKE PLAINTIFFS' CLASS ALLEGATIONS ................. 2

    A.  State and Local Laws Vest Counties, Cities, and Towns, and Their
        Duly Appointed Officials, with the Duty To Initiate Any Suit on Their
        Behalf ...................................................................................................... 3

    B.  Plaintiffs' Proposed Class Does Not Satisfy Rule 23(a)(1) .................................. 6

II. THE COMPLAINT FAILS, IN PART, TO STATE CLAIMS UPON WHICH
    RELIEF CAN BE GRANTED ............................................................................ 8

    A.  AT&T Has Properly Moved To Dismiss in Part .................................................. 8

    B.  The Complaint's Claim That AT&T Violated § 23-47-50(A) in Billing
        Its Multiplex Customers Fails as a Matter of Law ............................................. 10

    C.  The Complaint Fails to State a Claim That AT&T Violated § 23-47-67
        By Capping Monthly 911 Charges to VoIP Customers at 50 Per
        Account ................................................................................................... 11

CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ackal v. Centennial Beauregard Cellular, LLC*, 700 F.3d 212 (5th Cir. 2012) ...........................6

*Adams v. Air Methods Corp.*, 2016 WL 7115905 (D.S.C. Aug. 12, 2016) .................................2

*Alltel Commc'ns, Inc. v. S.C. Dep't of Revenue*, 731 S.E.2d 869 (S.C. 2012) .............................14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................................9

*BBL, Inc. v. City of Angola*, 809 F.3d 317 (7th Cir. 2015) ..........................................................9

*BellSouth Telecomms., Inc. v. City of Orangeburg*, 522 S.E.2d 804 (S.C. 1999) ........................15

*Berry v. McLeod*, 492 S.E.2d 794 (S.C. App. Ct. 1997).......................................................1, 3

*Brown v. County of Horry*, 417 S.E.2d 565 (S.C. 1992) ............................................................14

*Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484 (D.S.C. 1991) .......................................................3

*Bui v. ADT LLC*, 2013 WL 3967112 (D.S.C. Aug. 1, 2013) ........................................................9

*Butts v. Fed. Nat'l Mortg. Ass'n*, No. 9:12-cv-1912-RMG
　　(D.S.C. Mar. 11, 2013) ........................................................................................................3

*Central Power & Light Co. v. City of San Juan*, 962 S.W.2d 602 (Tex. App. 1998).....................4

*Clark v. Virginia Paper Co.*, 1978 WL 13931 (D.S.C. May 3, 1978)............................................6

*Conner v. Nucor Corp.*, 2015 WL 5785510 (D.S.C. Sept. 30, 2015)............................................9

*Dallas County v. MERSCORP, Inc.*, 2012 WL 6208385 (N.D. Tex. Dec. 13, 2012) ....................4

*DeGidio v. Crazy Horse Saloon & Rest., Inc.*, 2017 WL 5624310 (D.S.C. Jan. 26, 2017) ...........7

*Dickenson-Russell Coal Co. v. Sec'y of Labor*, 747 F.3d 251 (4th Cir. 2014)............................12

*Ex parte Hart*, 2 S.E.2d 52 (S.C. 1939) ...............................................................................1, 3

*Ford v. Georgetown Cty. Water & Sewer Dist.*, 341 S.C. 10 (2000)...........................................14

*German Evangelical Lutheran Church of Charleston v. City of Charleston*,
　　576 S.E.2d 150 (S.C. 2003) ................................................................................................14

*Gibson v. Confie Ins. Grp. Holdings, Inc.*, 2017 WL 2936219 (D.S.C. July 10, 2017) .................7

*Gortat v. Capala Bros.*, 2010 WL 1879922 (E.D.N.Y. May 10, 2010) .........................................5

*Grant v. New York Times Co.*, 2018 WL 5839694 (S.D.N.Y. Nov. 8, 2018)...................................6

*Gray v. Hearst Commc'ns, Inc.*, 2010 WL 11531121 (D.S.C. Feb. 1, 2010)................................7

*Henderson v. Evans*, 232 S.E.2d 331 (S.C. 1977) ........................................................13

*IBM Corp. v. Priceline Grp. Inc.*, 2017 WL 1349175 (D. Del. Apr. 10, 2017) .............................9

*Kelley v. Norfolk & W. Ry. Co.*, 584 F.2d 34 (4th Cir. 1978)..........................................7

*Mensack v. S.C. Dep't of Mental Health*, 2016 WL 4374845 (D.S.C. Aug. 17, 2016).................9

*Mohsenzadeh v. Lee*, 5 F. Supp. 3d 791 (E.D. Va. 2014) .............................................12

*Montgomery Cty., Md. v. Fed. Nat'l. Mortg. Ass'n*, 740 F.3d 914 (4th Cir. 2014).......................4

*Mungo v. CUNA Mut. Ins. Soc'y*, 2012 WL 3704924 (D.S.C. Aug. 24, 2012).........................2

*Newport News Shipbuilding & Dry Dock Co. v. Brown*, 376 F.3d 245 (4th Cir. 2004)...............13

*Phone Recovery Servs., LLC v. Qwest Corp.*, 919 N.W.2d 315 (Minn. 2018).............................15

*Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011) ..........................................7

*Premium Inv. Corp. v. Green*, 324 S.E.2d 72 (S.C. Ct. App. 1984)........................................5

*Roberts v. Target Corp.*, 2012 WL 2357420 (W.D. Okla. June 20, 2012)...................................8

*Roman v. ESB, Inc.*, 550 F.2d 1343 (4th Cir. 1976) ........................................................7

*Romig v. Pella Corp.*, 2016 WL 3125472 (D.S.C. June 3, 2016)...................................................7

*Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105 (4th Cir. 2013)..........................................7

*Verizon v. FCC*, 740 F.3d 623 (D.C. Cir. 2014)........................................................12

*Wigfall v. Tideland Utils., Inc.*, 580 S.E.2d 100 (S.C. 2003)........................................5

**Statutes**

47 U.S.C. § 615a-1(f)(1) ........................................................13, 14

47 U.S.C. § 1302(a) ........................................................13

S.C. Code Ann. § 6-1-520........................................................15

S.C. Code Ann. § 6-1-530........................................................15

S.C. Code Ann. § 23-47-40........................................................14

S.C. Code Ann. § 23-47-50........................................................ *passim*

S.C. Code Ann. § 23-47-67........................................................................................ *passim*

**Other Authorities**

William B. Rubenstein, *Newberg on Class Actions* § 7:22 (5th ed. 2018).................................3, 5

# INTRODUCTION

Apparently unable to convince other South Carolina local government entities to pursue claims based on erroneous interpretations of the State's 911 Act, private counsel seek to usurp those entities' sovereign authority by purporting to bring suit on their behalf. But for more than 80 years, South Carolina courts have held that "[t]he authority to decide when a claim should or should not be brought by a governmental entity is vested with the entity," and cannot be controlled by others. *Ex parte Hart*, 2 S.E.2d 52, 54 (S.C. 1939); *Berry v. McLeod*, 492 S.E.2d 794, 800 (S.C. App. Ct. 1997). Plaintiffs simply ignore this settled law, which forecloses their effort to bring claims on behalf of the absent local government entities.

The unpublished order from this Court Plaintiffs cite provides no support for their class: that was a class of individual county officials certified by *consent*. Neither that order, nor *any* of the decisions from other jurisdictions they cite, considered arguments that state law prohibits class actions on behalf of absent counties. Nor do those cases address local ordinances that, like those here, dictate — in mandatory language — that duly elected or appointed government attorneys *shall* represent the government entity in *all* legal matters.

Independently, Plaintiffs fail to satisfy Rule 23(a)'s numerosity requirement. Local governments are capable of deciding whether to pursue an action in their own name, and their joining together as needed to bring such claims is practicable. The very cases Plaintiffs cite (at 7-8) demonstrate as much. For all these reasons, the Court should strike the class allegations.

The Court should also dismiss — in their entirety — two of Plaintiffs' claims that AT&T violated the 911 Act, which are based on misinterpretations of the 911 Act and fail as a matter of law. Rule 12(b)(6) is properly used to dismiss such claims at the outset. Plaintiffs' choice to plead those claims together with others in each count in the Complaint is no barrier to dismissal.

<u>PRI Services</u>.  Plaintiffs' claim in the Complaint that AT&T's billing for PRI services violated § 23-47-50(A) conflicts with the plain text of that provision.  Plaintiffs make no attempt to square their claim with the statutory text, which they quote only in part, omitting the key language that forecloses their claim.  Plaintiffs' attempt to manufacture a disputed factual issue is an exercise in distraction — nothing precludes the Court from declaring that the 911 Act means what it says and dismissing a claim that is based on a misreading of the statute.

<u>VoIP Services</u>.  Plaintiffs' claim in the Complaint that AT&T violated § 23-47-67 by capping its billing to VoIP customers at 50 charges per account per month equally conflicts with the Act's text.  The VoIP 911 charge is set "in an amount identical to the amount of the 911 charge imposed on ***each*** local exchange access facility pursuant to Section . . . 23-47-50(A)." S.C. Code Ann. § 23-47-67(A) (emphasis added).  Plaintiffs fail to give the word "each" a plausible meaning and offer no reason why the Legislature would have intended to create a massive tax disparity between large customers buying VoIP and non-VoIP services.  At a minimum, § 23-47-67 is ambiguous, and the Court must construe any ambiguities against Plaintiffs to avoid express preemption and because 911 charges are taxes.

## ARGUMENT

## I. THE COURT SHOULD STRIKE PLAINTIFFS' CLASS ALLEGATIONS

A court should strike class allegations under Rule 12 where "the complaint does not plausibly suggest" that plaintiffs could be entitled to class certification, *Adams v. Air Methods Corp.*, 2016 WL 7115905, at *2 (D.S.C. Aug. 12, 2016), not where such certification is "*impossible*," Opp'n at 8.[1]  Because the putative class cannot plausibly be certified without violating South Carolina law and Rule 23, the Court should strike the class allegations.

---

[1] The standard of review for a motion to strike class allegations is "analogous to the standard . . . [under] Rule 12(b)(6)."  *Mungo v. CUNA Mut. Ins. Soc'y*, 2012 WL 3704924, at *4 (D.S.C. Aug. 24, 2012).  Before *Twombly,* this meant "defendants ha[d] the burden of

**A.** **State and Local Laws Vest Counties, Cities, and Towns, and Their Duly Appointed Officials, with the Duty To Initiate Any Suit on Their Behalf**

**1.** Plaintiffs' class allegations are incompatible with sovereign South Carolina governments' unique authority under state law to decide when a claim should be initiated on their behalf. Under South Carolina law, "[t]he authority to decide when a claim should or should not be brought by a governmental entity is vested with the entity," and "[a] court will not . . . interfere" with that authority absent "illegality, fraud, or clear abuse of authority" in "unjustifiably refus[ing] to assert the claim." *Berry*, 492 S.E.2d at 800. Here, named Plaintiffs "fail[] to allege any factual basis" that could support an "assertion that the [absent class members] abused their discretion in deciding not to initiate this litigation." *Id.* at 801. Absent such an abuse of discretion, no local government — including the absent class members — can be "compelled" to bring a suit. *Ex parte Hart*, 2 S.E.2d at 54. Plaintiffs ignore this settled authority. They make no mention of *Ex parte Hart* or *Berry*, or of the South Carolina Constitution provisions those cases and their progeny enforce. *See* AT&T Mot. at 2-3, 11-12.

Instead, Plaintiffs suggest (at 8-9) that this Court's certification of a class of individual county officials in *Butts v. Federal National Mortgage Association*, No. 9:12-cv-1912-RMG (D.S.C. Mar. 11, 2013), is evidence that their class of counties, cities, and towns can go forward. But all defendants in that case "*consented* to . . . certification," Opp'n Ex. A at 1 (emphasis added), of a class "limited to [specified] persons in South Carolina counties,"[2] shortly before this

---

demonstrating from the face of plaintiffs' complaint that it will be impossible to certify the classes alleged." *Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484, 1495 (D.S.C. 1991). Since *Twombly*, the motion to strike standard has adjusted with the Rule 12(b)(6) standard to require plaintiffs to allege plausible claims. *See* William B. Rubenstein, *Newberg on Class Actions* § 7:22 (5th ed. 2018). Although courts in this District occasionally have cited the superseded "impossibility" language from the pre-*Twombly Bryant* decision, the applicable standard is plausibility.

[2] Br. in Support of Pl.'s Class Cert. Mot. at 7, *Butts v. Fed. Nat'l Mortg. Ass'n*, No. 9:12-cv-1912-RMG (ECF No. 22-1), *available at* https://bit.ly/2X3rWWx.

Court dismissed the case on the merits. Therefore, this Court had no occasion to consider the arguments presented here or the South Carolina law governing a county's sovereign authority to decide whether to initiate a lawsuit.[3]

None of the other cases Plaintiffs cite (at 9) supports their purported class here. None involved South Carolina law. And none considered whether certification of a class of absent counties is consistent with the law of any state, in the decision or the briefs. The only one Plaintiffs discuss in any detail (at 11) — *Central Power & Light Co. v. City of San Juan*, 962 S.W.2d 602 (Tex. App. 1998) — demonstrates the flaw in their argument. *Central Power* involved a class of Texas cities, not counties. *See id.* at 612. As another Texas court explained in refusing to certify a class of Texas counties, Texas law draws a fundamental difference between counties and cities; only the former are instrumentalities of the State. *See Dallas County v. MERSCORP, Inc.*, 2012 WL 6208385, at *9 (N.D. Tex. Dec. 13, 2012). In South Carolina, counties, cities, and towns are *all* subdivisions of the State, vested with specific powers that must remain in the hands of their elected local officials. *See* AT&T Mot. at 2-3.

**2.**     The class allegations independently conflict with local government ordinances that set forth requirements for initiating a claim on their behalf. *See id.* at 13-16 (quoting ordinances). Plaintiffs assert (at 10-13) that their class allegations are consistent with these ordinances, noting that they do not expressly prohibit a government entity from being conscripted into a class action. But the ordinances almost all provide that the elected or appointed government attorney "shall represent" the entities in every legal action, and "shall . . . conduct" or "shall participate in" all litigation. AT&T Mot. at 13-16. "The term 'shall' in a

---

[3] Plaintiffs point (at 9 n.3) to the Fourth Circuit's mischaracterization of the certified class as one of counties, rather than specified officials. But because the Fourth Circuit affirmed this Court's dismissal on the merits, it also had no occasion to consider the propriety of the consented-to certification order. *See Montgomery Cty., Md. v. Fed. Nat'l. Mortg. Ass'n,* 740 F.3d 914, 919 (4th Cir. 2014).

statute means that the action is mandatory." *Wigfall v. Tideland Utils., Inc.*, 580 S.E.2d 100, 105 (S.C. 2003). There was, therefore, no need for those ordinances to prohibit participation in a class action as absent class members. Plaintiffs' counsel has no authority to act on behalf of the absent government entities.[4]

Citing *Newberg on Class Actions* and an ABA Ethics opinion, Plaintiffs also argue (at 10-11) that these ordinances are irrelevant because "[a]n absent class member is not a party to the action" and "will be permitted to opt-out of any Rule 23(b)(3) class," and because "[a] client-lawyer relationship with a potential member of the class does not begin until the class has been certified and the time for opting out . . . has expired." But the treatise says nothing about the propriety of a class of government-entity plaintiffs; one portion of the treatise Plaintiffs cite (§ 9:12) merely discusses whether absent class members are parties for purposes of responding to discovery requests; and Plaintiffs also seek to certify a Rule 23(b)(2) class, which has no opt outs. As to the ethics opinion, numerous courts — including South Carolina courts construing the state analog to the Federal Rules of Civil Procedure — disagree and hold that an attorney-client relationship attaches at the moment the court certifies a class. *See Gortat v. Capala Bros.*, 2010 WL 1879922, at *2 (E.D.N.Y. May 10, 2010) (collecting cases); *Premium Inv. Corp. v. Green*, 324 S.E.2d 72, 76 (S.C. Ct. App. 1984). It serves no purpose to wait for class certification; Plaintiffs' counsel's representation of the absent local governments will be just as unlawful at that point as it is today.

---

[4] Contrary to Plaintiffs' claim (at 13), AT&T did not suggest that Motley Rice was acting without Plaintiffs' approval. *See* AT&T Mot. at 16 & n.17 (citing meeting minutes approving the retention). AT&T noted that it appeared that the County and Town had not complied with their ordinances, which require the County attorney to "[p]articipate in any litigation" and the Town attorney to "conduct all suits" and "enter an appearance." *Id.* at 16 (quoting ordinances). The Town attorney acknowledges that entry of an appearance — which still has not occurred — is necessary to comply with the ordinance. *See* Opp'n Ex. F ¶ 4.

**3.** Finally, Rule 23 does not authorize a procedure through which the local government members of the putative class would "opt-in," by later following their ordinances and authorizing this suit to be brought on their behalf. Plaintiffs do not dispute this legal principle, recognized in *Ackal v. Centennial Beauregard Cellular, LLC*, 700 F.3d 212, 215 (5th Cir. 2012), and its progeny. They merely assert (at 12) that the pre-conditions the South Carolina ordinances impose on initiating local government lawsuits are less onerous than in those other cases. Not so. For example, the briefing in *Automotive Parts Antitrust Litigation* describes local ordinances substantively identical to those at issue here.[5] As in those cases, the absent class members here would need to secure *advanced* approval from the applicable governing body, and codify that approval through minutes or resolutions. Moreover, because the ordinances almost uniformly require the duly elected or appointed government attorney to conduct or at least participate in the litigation, the absent class members would need to amend their ordinances through the proper procedures to remove any such obligations before they could join a class. That is precisely the type of opt-in procedure Rule 23 prohibits.

## B. Plaintiffs' Proposed Class Does Not Satisfy Rule 23(a)(1)

Plaintiffs also fail to satisfy Rule 23(a)'s numerosity requirement. Contrary to Plaintiffs' suggestion, there is no prohibition on striking class allegations for lack of numerosity at the outset of a case. *See, e.g., Clark v. Virginia Paper Co.*, 1978 WL 13931, at *3 (D.S.C. May 3, 1978); *Grant v. New York Times Co.*, 2018 WL 5839694, at *5-6 (S.D.N.Y. Nov. 8, 2018). While Plaintiffs cite cases (at 14) finding a motion to strike to be premature where class certification (typically the predominance or commonality inquiry) is "enmeshed in the factual

---

[5] *See, e.g.*, Mot. To Dismiss All Class Components of the Complaint at 21 n.18, No. 2:14-cv-00106 (E.D. Mich., Oct. 31, 2014) (Dkt. No. 36) (citing Palo Alto Mun. Code, Title 2, Section 2.08.120 ("The . . . city attorney shall . . . represent the city in all actions at law."), *available at* https://bit.ly/2BCVKjx.

and legal issues" on the merits, *Gibson v. Confie Ins. Grp. Holdings, Inc.*, 2017 WL 2936219, at

*12 (D.S.C. July 10, 2017), that is not the case here, and a ruling at this stage is appropriate. *See*

*Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 116 (4th Cir. 2013) (affirming grant of

defendants' motion to strike or dismiss class action allegations).[6] The specific number of

governmental entities to which AT&T has remitted 911 charges has no bearing on the merits. It

is also undisputed: AT&T established the size of the potential class by declaration, and Plaintiffs

have not challenged it or claimed a need for discovery.

    Substantively, Plaintiffs (at 15) treat numerosity as though it were a bright line rule,

satisfied here because the putative class has more than 40 members. But it is well settled in this

Circuit that "there is no magic number threshold" for numerosity. *Gray v. Hearst Commc'ns,*

*Inc.*, 2010 WL 11531121, at *10 (D.S.C. Feb. 1, 2010), *aff'd*, 444 F. App'x 698 (4th Cir. 2011).[7]

The Fourth Circuit has upheld decisions both certifying classes with more than 40 members and

*denying* certification of classes with more than 40 members. *See Roman v. ESB, Inc.*, 550 F.2d

1343, 1348-49 (4th Cir. 1976) (en banc) (holding purported class of 53 members not sufficiently

numerous); *Kelley v. Norfolk & W. Ry. Co.*, 584 F.2d 34, 35-36 (4th Cir. 1978) (holding

purported class of 67 members not sufficiently numerous).[8]

---

[6] *See also*, *e.g.*, *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (striking class allegations prior to discovery when the plaintiffs failed to "explain what type of discovery or . . . factual development would alter the central defect in th[e] class claim.").

[7] The cases Plaintiffs cite (at 15) recognize as much. *See*, *e.g.*, *DeGidio v. Crazy Horse Saloon & Rest., Inc.*, 2017 WL 5624310, at *9 (D.S.C. Jan. 26, 2017) ("There is no magic number to meet the numerosity requirement."); *Romig v. Pella Corp.*, 2016 WL 3125472, at *5 (D.S.C. June 3, 2016) ("[T]here is no mechanical test that the [c]ourt can use when determining whether numerosity exists.").

[8] Plaintiffs concede that *Roman* involved a class of 53 individuals, but attempt to distinguish it by noting that "all but eleven members of the proposed class were named as individual plaintiffs." Opp'n at 15. That only serves to highlight that the numerosity analysis is case specific and that it is not "basically black letter law," as Plaintiffs contend (at 15), that a class of 40 satisfies Rule 23(a)'s numerosity requirement. And while Plaintiffs claim that the *Kelley* class contained only "twenty-five members at best," *id*, the Fourth Circuit recognized that

Plaintiffs do not address any of the factors courts consider in assessing numerosity, *see* AT&T Mot. at 20-21, instead simply asserting (at 15) that a class of 46 is too large for joinder to be practicable. Such conclusory assertions "do[] not state a plausible claim for maintenance of a class." *Roberts v. Target Corp.*, 2012 WL 2357420, at *3 (W.D. Okla. June 20, 2012). Plaintiffs cannot and do not allege the absent class members are geographically diverse: there is only one federal judicial district in the state. And they do not dispute that more than 50 local government entities of all sizes have brought 911-related suits in their own names in other states, including 15 that banded together in Tennessee to file a single lawsuit. *See* AT&T Mot. at 21 & n.18. Nor do Plaintiffs allege they will have difficulty identifying the members — indeed, they concede the opposite (Compl. ¶ 63), and AT&T has provided them with a list of *all* of them. These facts demonstrate that putative class members interested in pursuing these claims have sufficient resources to file in their own names, and that joinder is not impracticable.

## II. THE COMPLAINT FAILS, IN PART, TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED

### A. AT&T Has Properly Moved To Dismiss in Part

Plaintiffs claim that AT&T violated § 23-47-50(A) because it was "require[d]" to, but did not, bill "all of [its] business subscribers to PRI service . . . 23 911 charges." Compl. ¶ 43; *see id.* ¶¶ 36-37. Plaintiffs claim further that AT&T violated § 23-47-67 because, for a VoIP customer with "thousands of [telephone] numbers," AT&T was required to, but did not, bill thousands of 911 charges to such a customer. *Id.* ¶¶ 40, 44.[9] Both claims depend on Plaintiffs'

---

actually "it might be that . . . the appropriate class would embrace all [67 of] the black car repairmen." 584 F.2d at 35.

[9] Plaintiffs also claim AT&T violated § 23-47-67 by billing VoIP customers "by simultaneous call capability" (up to 50 per account per month), rather than by "telephone number." Compl. ¶ 44. AT&T disputes the statutory interpretation underlying that claim but does not move for dismissal of that claim.

assertion, which this Court need not accept as true,[10] that their interpretation of those statutory provisions is correct and that AT&T's interpretation is "not . . . correct" or "incorrect." *Id.* ¶¶ 43-44. If Plaintiffs are wrong about the meaning of the 911 Act and AT&T is right, these statutory violation claims fail as a matter of law.

That Plaintiffs chose to combine their various statutory violation claims in multiple counts seeking overlapping relief does not prevent AT&T from moving to dismiss those counts insofar as they are based on claims that fail as a matter of law. *See*, *e.g.*, *Mensack v. S.C. Dep't of Mental Health*, 2016 WL 4374845, at *1-2 (D.S.C. Aug. 17, 2016) (granting "[d]efendants' motion for partial dismissal . . . to the extent [] [counts] rely on" particular statutes, and "dispos[ing] of [one] cause of action in full and limit[ing] the [other two]"); *Conner v. Nucor Corp.*, 2015 WL 5785510, at *4 (D.S.C. Sept. 30, 2015) (granting motion to dismiss "part of Count 2" on grounds that "not all [alleged sources of law] apply," finding count "subject to dismissal" to extent it was based on three of the five alleged legal theories); *Bui v. ADT LLC*, 2013 WL 3967112, at *1 (D.S.C. Aug. 1, 2013) ("grant[ing] . . . partial motion to dismiss to the extent that it sought to limit Plaintiff's damages claim" to the maximum allowed under the parties' contract).[11] Nor is this Court's denial of the motions to dismiss in *Charleston County* and *Richland County* dispositive. Defendants there did not contend that — and the Court did not

---

[10] "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[11] While the Seventh Circuit has stated, in dicta, that "Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims," *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015), the Fourth Circuit has never adopted such a rule. Also, the defendant in *BBL* had moved for "judgment on the pleadings on certain parts of the legal test applicable to BBL's First Amendment claim." *Id.* at 320. Here, by contrast, AT&T has moved to dismiss two claims in their entirety. *See also IBM Corp. v. Priceline Grp. Inc.*, 2017 WL 1349175, at *6-7 (D. Del. Apr. 10, 2017) (distinguishing the dicta in *BBL* on the same grounds).

decide whether — any of Plaintiffs' claims fail as a matter of law because they are based on incorrect statutory interpretations.  That issue is now pending in those cases.[12]

### B. The Complaint's Claim That AT&T Violated § 23-47-50(A) in Billing Its Multiplex Customers Fails as a Matter of Law

The Complaint alleges that § 23-47-50(A) "requires [AT&T] to assess 23 911 charges" to customers buying PRI services unless the customer "purchased fractional PRI service not delivered by a broadband connection," in which case the statute requires AT&T to assess five 911 charges.  Compl. ¶¶ 36-37, 43.  That is not what the statute says.  Instead, the number of 911 charges such a customer must pay turns on whether the "number of activated outward voice transmission paths can be modified by the subscriber without" — or "only with" — the "assistance of the service supplier."  S.C. Code Ann. § 23-47-50(A); *see* AT&T Mot. at 21-25.

Plaintiffs quote § 23-47-50(A) only once in their brief (at 5), and even then omit more than half of the relevant language, including the "without" and "only with" clauses.  Plaintiffs also fail to defend some interpretations of § 23-47-50(A) set forth in the Complaint (¶¶ 36, 43), while attempting (at 17) to recharacterize another (¶ 37).  The Complaint actually alleges that "fractional PRI service not delivered by a broadband connection" is the *only* instance in which five 911 charges are due, and that "[t]his type of service is rare."  Compl. ¶ 37.  As AT&T showed, and Plaintiffs do not dispute, that allegation has no basis in the text of § 23-47-50(A).  *See* AT&T Mot. at 23-24.

Plaintiffs next allege (at 17-19) that there are factual disputes about their claim that AT&T violated § 23-47-50(A).  Not so.  The word "multiplex" is not "essential to [AT&T's] Motion," as Plaintiffs contend (at 18).  Like parties and courts in other jurisdictions, AT&T

---

[12] *See* Defs.' Mot. for J. on the Pleadings, *County of Charleston*, No. 2:17-cv-02534-RMG (D.S.C. Dec. 21, 2018) (Dkt. No. 134) (decision pending), *County of Richland*, No. 3:18-cv-01295 (D.S.C. Dec. 21, 2018) (Dkt. No. 69) (decision pending).

"use[d] 'multiplex' . . . as shorthand for a lengthy statutory phrase":  "local exchange access facility that is capable of simultaneously carrying multiple voice and data transmissions."  AT&T Mot. at 4 n.2.  Nor are there any factual disputes about the meaning of the statutory phrases "without the assistance of the service supplier" and "activated outward voice transmission paths."  AT&T showed (at 22-23) that those phrases have plain meanings, and Plaintiffs have never offered an alternative construction.

In all events, Plaintiffs do not allege that AT&T violated § 23-47-50(A) based on those phrases.  Instead, the Complaint claims AT&T violated § 23-47-50(A) because it was allegedly required to, but did not, bill 23 charges to every PRI customer that did not buy "fractional PRI service not delivered by a broadband connection."  That claim fails as a matter of law.  And Plaintiffs do not plead a claim that AT&T violated § 23-47-50(A), properly interpreted.  *See* AT&T Mot. at 23-25.  The Court therefore should dismiss all counts of the Complaint insofar as they are based on the claim that AT&T violated Plaintiffs' interpretation of § 23-47-50(A).

### C.    The Complaint Fails to State a Claim That AT&T Violated § 23-47-67 By Capping Monthly 911 Charges to VoIP Customers at 50 Per Account

**1.**    The Complaint alleges that AT&T's VoIP customers are not subject to a 50-charge per month cap and, instead, can be required to pay "thousands" of 911 charges each month under § 23-47-67.  Compl. ¶ 40.  Again, that is directly contradicted by the statute's text.  The Act's VoIP 911 charge provision, § 23-47-67, expressly incorporates § 23-47-50(A), requiring a 911 charge "identical to" the 911 charge billed on "each local exchange access facility" to be billed on "each VoIP service line."  S.C. Code Ann. § 23-47-67(A)-(B).  This is possible only if the 50-charge cap applies to both service types.  *See* AT&T Mot. at 25-27.

In arguing otherwise, Plaintiffs fail to offer a plausible interpretation of "each" in § 23-47-67(A) ("each local exchange access facility"), addressing only the word "each" in § 23-47-

67(B) ("each VoIP service line"), which they miscite (at 21) as § 23-47-67(A).[13]  Plaintiffs do

not dispute that "each" means "every one." *Dickenson-Russell Coal Co. v. Sec'y of Labor*, 747

F.3d 251, 258 (4th Cir. 2014) (emphasis omitted).[14]  Nor is there any dispute that a non-VoIP

customer in Dorchester or Summerville pays $0 in 911 charges on local exchange access facility

number 51 or 501.[15]  For the VoIP 911 charge to be "identical to the amount . . . imposed on

***each*** local exchange access facility," S.C. Code Ann. § 23-47-67(A) (emphasis added), the same

must be true for a customer's fifty-first or five hundred and first VoIP service line.  Plaintiffs are

thus wrong to argue (at 19-21) that AT&T is attempting to "convert the singular into plural."

AT&T is not arguing that each local exchange access facility or VoIP service line has more than

one applicable 911 charge, but instead that a different charge applies to each of the first 50 such

facilities or lines than the charge that applies to each subsequent facility or line.[16]

    **2.**      At a minimum, AT&T has offered a reasonable interpretation of § 23-47-67(A),

which is also the interpretation of other telephone companies.  *See* AT&T Mot. at 27 n.20 (citing

Sprint Affidavit referenced in Complaint); Joint Partial Mot. To Dismiss at 12-18, *County of*

---

    [13] As to § 23-47-67(B), Plaintiffs assert (at 21) only that AT&T has "read[] the phrase 'each VoIP service line' . . . out of order."  It is not clear what Plaintiffs mean, but AT&T has read the statute in order:  § 23-47-67(A) establishes the "VoIP 911 charge" as one "identical" to the "charge imposed on each local exchange access facility" and § 23-47-67(B) then requires the "VoIP 911 charge established in subsection (A)" to be collected "on each VoIP service line."

    [14] In asserting that this definition of "each" bolsters their position, Plaintiffs (at 22 n.6) ignore that giving full meaning to "each" requires "consider[ing] separately" "every one" in a group.  *Dickenson-Russell*, 747 F.3d at 258.

    [15] Plaintiffs note (at 21 n.5) that *Verizon v. FCC*, 740 F.3d 623 (D.C. Cir. 2014), addressed net neutrality.  But they ignore that the *Verizon* court recognized that a prohibition "bar[ring]" a party "from charging" for a service sets "a price of $0" for that service.  *Id.* at 657.  The 911 Act similarly bars local governments from charging more than 50 911 charges per customer account per month, thus setting a rate of $0 for every local exchange access facility or VoIP service line above 50.

    [16] Plaintiffs cite (at 20) *Mohsenzadeh v. Lee*, 5 F. Supp. 3d 791 (E.D. Va. 2014), but that case is inapposite.  The statute at issue there did not make reference to "each patent," so the court had no occasion to interpret such language.

*Dorchester v. Level 3 Communications, LLC*, No. 2:18-cv-2891-RMG (D.S.C. Jan. 7, 2019).

Plaintiffs say nothing about this, even though their Complaint praises Sprint for properly

interpreting the 911 Act.  *See* Compl. ¶¶ 45, 52.  Even if Plaintiffs' interpretation were also

reasonable — and Plaintiffs offer no reason why the Legislature would have wanted to create a

massive tax disparity between large customers buying VoIP services and those buying non-VoIP

services — that simply means § 23-47-67 "is ambiguous" because "it lends itself to more than

one reasonable interpretation."  *Newport News Shipbuilding & Dry Dock Co. v. Brown*, 376 F.3d

245, 248 (4th Cir. 2004).  This Court must construe any such ambiguities against Plaintiffs for

two reasons.

    *First*, because "a possible constitutional construction must prevail over an

unconstitutional interpretation," *Henderson v. Evans*, 232 S.E.2d 331, 333-34 (S.C. 1977), the

50-charge cap must be read to extend to VoIP customers to avoid the express preemption

provision in 47 U.S.C. § 615a-1(f)(1).  Plaintiffs assert (at 24) that Congress was concerned in

§ 615a-1(f)(1) with ensuring only that "the unit price" charged to VoIP and non-VoIP customers

was the same.  But § 615a-1(f)(1) is *at best* ambiguous:  "amount of any such fee or charge" can

reasonably be read to refer to the total amount charged and not merely the unit price.  *See* AT&T

Mot. at 28-29.  And only the former interpretation (total amount) furthers Congress's avowed

policy of encouraging the deployment of broadband, *see* 47 U.S.C. § 1302(a), which the FCC has

found requires increased use of VoIP services, *see* AT&T Mot. at 29 (citing decisions).

Plaintiffs say nothing about this clearly articulated federal policy.[17]

    Nor does AT&T's reading of § 615a-1(f)(1) lead to "absurd results."  Opp'n at 24.

Plaintiffs are wrong to claim that AT&T reads § 615a-1(f)(1) to require a state to impose the

---

[17] Plaintiffs (at 24-25) incorrectly suggest that AT&T is arguing conflict preemption.
Section 615a-1(f)(1) *expressly* preempts inconsistent state laws.  AT&T relies on the federal
policy set out in § 1302 and FCC decisions as an aide in interpreting § 615a-1(f)(1).

same total amount of 911 charges on VoIP and non-VoIP customers, regardless of the quantity of services each purchases.  Nothing in § 615a-1(f)(1) prohibits South Carolina from requiring a customer buying 50 VoIP service lines to pay more in total 911 charges than a non-VoIP customer buying 25 local exchange access facilities.  But South Carolina has made the decision to cap the number of 911 charges a non-VoIP customer must pay at 50 per account per month *no matter what quantity* of service that customer buys.  Section 615a-1(f)(1) expressly preempts South Carolina from refusing to extend that same treatment to VoIP customers.

*Second*, 911 charges are taxes and, where "a tax law is ambiguous," that ambiguity "must be resolved in favor of the taxpayer."  *Alltel Commc'ns, Inc. v. S.C. Dep't of Revenue*, 731 S.E.2d 869, 872 (S.C. 2012).  Although Plaintiffs' counsel did not contest this in *Charleston County* and *Richland County*, they do so here.  They are wrong.  The 911 Act explicitly states that local governments' 911 ordinances "must be adopted in the same fashion as ordinances that levy taxes under South Carolina law."  S.C. Code Ann. § 23-47-40(A).  Although not dispositive, that choice "must be given judicial respect."  *Brown v. County of Horry*, 417 S.E.2d 565, 567 (S.C. 1992).  Moreover, to be a "fee," payors must "receive[] a special benefit" not offered to others, even if the non-payors also obtain some benefit.  *Ford v. Georgetown Cty. Water & Sewer Dist.*, 341 S.C. 10, 13-14 (2000); *see also German Evangelical Lutheran Church of Charleston v. City of Charleston*, 576 S.E.2d 150, 152 n.8 (S.C. 2003) ("[G]enerally, a tax is an enforced contribution to provide for the support of government, whereas a fee is a charge for a particular benefit to the payer.").  Plaintiffs identify no such "special benefit," and there is none: everyone who dials 911 in Dorchester or Summerville will reach a 911 call center and receive the exact same service, regardless of whether the caller paid 911 charges to the local government.  Therefore, 911 charges, as "an enforced contribution to provide for the support of

"[the] government" service of providing public access to 911, are properly classified as taxes.

*BellSouth Telecomms., Inc. v. City of Orangeburg*, 522 S.E.2d 804, 806 (S.C. 1999).[18]

The majority of courts to consider this issue have concluded 911 charges are taxes, as has the federal government. *See* AT&T Mot. at 12 nn.13-14 (citing decisions). Plaintiffs (at 27-28) ignore the federal government's views and cite the minority cases reaching the opposite result. Plaintiffs also attempt to distinguish the Minnesota Supreme Court's recent decision finding 911 charges are taxes. But that court found its classification of 911 charges as taxes under Minnesota's tax definition statute "consistent with [its common law] precedent that generally defines a 'tax'" and that, like South Carolina, holds that a charge is a tax where it is "a broadly assessed revenue measure that benefit[s] the general public, not just those paying the assessment." *Phone Recovery Servs., LLC v. Qwest Corp.*, 919 N.W.2d 315, 324 n.7 (Minn. 2018).

## CONCLUSION

For these reasons, and those set forth in AT&T's opening brief, this Court should strike the class allegations and dismiss each count of the Complaint insofar as it is based on claims that AT&T violated the 911 Act, as Plaintiffs erroneously interpret that statute.

---

[18] That Plaintiffs "keep their 911 service charges in separate accounts" and "spend the funds only for establishing and maintaining 911 services," Opp'n at 26, is consistent with how other tax revenues are treated under South Carolina law. *See*, *e.g.*, S.C. Code Ann. § 6-1-520 (permitting "[a] local governing body [to] impose, by ordinance, a local accommodations tax ["LAT"]," and requiring "[a]ll proceeds from a [LAT] [] be kept in a separate fund segregated from the imposing entity's general fund"); *id.* § 6-1-530 (setting forth six "exclusive . . . purposes" for which "[t]he revenue generated by the [LAT] must be used").

Dated:  February 15, 2019

Respectfully submitted,

/s/ John A. Massalon
John A. Massalon (#5227)
Christy Ford Allen (#7549)
WILLS MASSALON & ALLEN LLC
Post Office Box 859
Charleston, SC 29402
(843) 727-1144
jmassalon@wmalawfirm.net
callen@wmalawfirm.net

Scott H. Angstreich
   (admitted *pro hac vice*)
David L. Schwarz
   (admitted *pro hac vice*)
Lillian V. Smith
   (admitted *pro hac vice*)
Kevin D. Horvitz
   (admitted *pro hac vice*)
KELLOGG, HANSEN, TODD,
   FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
(202) 326-7999 (fax)
sangstreich@kellogghansen.com
dschwarz@kellogghansen.com
lsmith@kellogghansen.com
khorvitz@kellogghansen.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I, John A. Massalon, hereby certify that a true and correct copy of the foregoing document filed through the ECF system was transmitted electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies have been sent to those indicated as non-registered participants by United States first-class mail or hand delivery on February 15, 2019.

/s/ John A. Massalon
John A. Massalon