# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| County of Dorchester, South Carolina, and Town of Summerville, South Carolina, <br><br>  Plaintiffs, <br><br> v. <br><br> AT&T Corp. and Bellsouth Telecommunications, LLC, <br><br>  Defendants. | Civil Action No. 2:18-2890-RMG <br><br> **ORDER AND OPINION** |

Before the Court is Defendants' joint partial motion to dismiss the Complaint and to strike the class allegations. (Dkt. No. 14.) For the reasons set forth below, the motion is granted in part and denied in part.

I.  **Background**

The 911 Act authorizes local governments, such as Plaintiffs, the County of Dorchester and the Town of Summerville, to adopt an ordinance imposing monthly charges on telephone consumers in order to fund local 911 call centers. *See* S.C. Code Ann. § 23-47-10 *et seq*. Plaintiffs adopted such ordinances. *See* Dorchester Cnty. Ord. § 12-20(2). (Dkt. No. 1 ¶ 2, No. 1-1.) The companies providing telephone service to consumers in the jurisdiction bill the 911 charges to their consumers, collect the charges from the consumers, and remit the amount to the local government minus a 2% administrative fee. *See* S.C. Code Ann. §§ 23-47-40, 50.

In their class action Complaint, Plaintiffs allege that Defendants violate the 911 Act, among other claims, by under-charging their consumers the 911 charge and, as a result, under-remitting the charge to Plaintiffs, which results in inadequately funded 911 call centers and a potential public safety concern. Plaintiffs seek to enforce their implied private rights of action

under the 911 Act and bring claims for (i) violation of the 911 Act, (ii) breach of statutory duty imposed by the 911 Act, (iii) breach of fiduciary duty imposed by the 911 Act, (iv) negligence and negligence *per se*, (v) constructive fraud (all as to Plaintiffs and the class), and (vi) violation of the South Carolina Unfair Trade Practices Act (as to Plaintiffs only). Plaintiffs also seek a declaratory judgment, permanent injunction and punitive damages (each as to Plaintiffs and the class). (Dkt. No. 1 ¶¶ 70-135.)

## II. Legal Standard

### A. Motion to Dismiss Pursuant to Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." A motion to dismiss tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses. . . . Our inquiry then is limited to whether the allegations constitute a short and plain statement of the claim showing that the pleader is entitled to relief." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (internal quotation marks and citation omitted). On a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Although the Court must accept the facts in a light most favorable to the Plaintiff, the Court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

Generally, to survive a motion to dismiss the complaint must provide enough facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2). Although the requirement of plausibility does not impose a probability requirement at this stage,

the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint alleging fraud or mistake, by contrast, "must state with particularity the circumstances" constituting the fraud. Fed. R. Civ. P. 9(b). The circumstances of the fraud are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentations and what he obtained thereby." *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (internal quotation marks omitted). A plaintiff claiming constructive fraud may allege that the defendant knew or should have known the falsity of its misrepresentations; alleging intent to deceive or actual dishonesty is not required. *See, e.g., Cheney Bros. Inc. v. Batesville Casket Co., Inc.*, 47 F.3d 111, 114 (4th Cir. 1995); *Pitts v. Jackson Nat. Life Ins. Co.*, 574 S.E.2d 502, 509 (S.C. 2002).

A plaintiff alleging fraud is held to a higher standard and "must state with particularity the circumstances" constituting the fraud. Fed. R. Civ. P. 9(b). The circumstances of the fraud are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentations and what he obtained thereby." *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (internal quotation marks omitted). A plaintiff claiming constructive fraud may allege that the defendant knew or should have known the falsity of its misrepresentations; alleging intent to deceive or actual dishonesty is not required. *Cheney Bros. Inc. v. Batesville Casket Co., Inc.*, 47 F.3d 111, 114 (4th Cir. 1995); *see also Pitts v. Jackson Nat. Life Ins. Co.*, 574 S.E.2d 502, 509 (S.C. 2002).

B.  **Motion to Strike Class Action Allegations Pursuant to Rule 12(f)**

Rule 12(f) of the Federal Rules of Civil Procedure provides that "the court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A motion to strike class allegations "ask[s], in other words, that the Court preemptively terminate the class aspects of this litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification. Defendants' contention is, in effect, that there is no set of facts plaintiffs could adduce under which they could meet the requirements for class certification of Rule 23[.]" *Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484, 1495 (D.S.C. 1991). "Rule 12(f) empowers courts to strike immaterial matter to promote judicial efficiency and avoid needless expenditure of time and money." *Gibson v. Confie Ins. Grp. Holdings, Inc.*, No. 2:16-cv-02872-DCN, 2017 WL 2936219, at *12 (D.S.C. July 10, 2017). "[S]uch motions are to be granted infrequently" and are reviewed for abuse of discretion: "decisions that are reasonable, that is, not arbitrary, will not be overturned." *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 227 Fed. Appx. 239, 246-47 (4th Cir. 2007) (quoting *Seay v. TVA*, 339 F.3d 454, 480 (6th Cir. 2003)).

"In a motion to dismiss class allegations, the defendants have the burden of demonstrating from the face of the plaintiffs' complaint that it will be impossible to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove, analogous to the standard of review for motions brought pursuant to Rule 12(b)(6)." *Mungo v. CUNA Mut. Ins. Soc.*, No. 0:11-464-MBS, 2012 WL 3704924, at *4 (D.S.C. Aug. 24, 2012) (citing *Bryant*, 774 F. Supp. 1484 at 1495); *see also Whitt v. Seterus, Inc.*, No. 3:16-2422-MBS, 2017 WL 1020883, at *2 (D.S.C. Mar. 16, 2017); *Adams v. Air Methods Corp.*, No. 3:15-cv-

1683-TLW, 2016 WL 7115905, at *2 (D.S.C. Aug. 12, 2016). "A court may grant a motion to strike class allegations where the pleading makes clear that the purported class cannot be certified and no amount of discovery would change that determination." *Waters v. Electrolux Home Prod., Inc.*, No. 5:13-cv-0151, 2016 WL 3926431, at *4 (N.D. W. Va. July 18, 2016).

### III. Discussion

#### A. Defendants' Partial Motion to Dismiss is Denied.

Defendants first move to dismiss the Complaint's nine counts to the extent Plaintiffs "allege[] that multiplex services must be billed in a manner inconsistent with the plain language of [S.C. Code Ann. § 23-47-50(A)." (*Id.* at 22.) Plaintiffs allege that primary rate interface ("PRI") allows a service provider to carry up to twenty-three simultaneous voice conversations over a single wire connection; that the 911 Act imposes a cap of five charges per access line only where the subscriber can modify the number of channels without assistance of the service provider (*see* S.C. Code Ann. § 23-47-50(A)[1]); that a consumer only rarely falls into this latter autonomous category by purchasing fractional PRI service not delivered by a broadband connection; and, therefore, that "Defendants should assess a PRI with twenty-three channels no fewer than twenty-three 911 service charges, because the PRI is capable of simultaneously connecting twenty-three separate users to the 911 system." (Dkt. No. 1 ¶¶ 36.) Defendants argue in part that this interpretation of Section 23-47-50(A) is unreasonable because a consumer need not purchase fractional PRI service not delivered by a broadband connection in order to modify the voice transmission paths without assistance of the service provider. (Dkt. No. 14 at 24.)

---

[1] "[A] subscriber must be billed a number of 911 charges equal to (a) the number of outward voice transmission paths activated on such a facility in cases where the number of activated outward voice transmission paths can be modified by the subscriber only with the assistance of the service supplier; or (b) five, where the number of activated outward voice transmission paths can be modified by the subscriber without the assistance of the service supplier."

Defendants also move to dismiss each of the nine counts insofar as the allegations contradict the 911 Act's fifty-charge cap, which Defendants contend is expressly imposed on a non-VoIP line (*see* S.C. Code Ann. § 23-47-50(A), providing that for an individual local exchange access facility, the "total number of 911 charges remains subject to the maximum of fifty 911 charges per account" as tiered) and also applies to VoIP lines via incorporation by reference (*see* S.C. Code. Ann. § 23-47-67(A), providing that "[t]here is hereby imposed a VoIP 911 charge in an amount identical to the amount of the 911 charge imposed on each local exchange access facility . . ."). (Dkt. No. 14 at 26.) Defendants argue that the statutory use of the word, "amount," is "reasonably read to refer not merely to the rate that is used to calculate the total amount of 911 charges due from a customer, but also to the total amount itself." (*Id.* at 29.)[2]

---

[2] Defendants also argue that the 911 charge is a "tax" requiring any statutory ambiguity to be resolved in favor of the taxpayer and submit, in further support of this argument, the Georgia Supreme Court's recent holding in *Bellsouth Telecommunications, LLC, et al. v. Cobb County, et al.*, 2019 WL 654174, at *7 (Ga. Feb. 18, 2019) that the Georgia 911 statute is a tax precluding recovery under common law tort and that the statute does not provide a private right of action. (Dkt. No. 14 at 30; No. 20.) But the *Cobb County* court notes that the Georgia Court of Appeals had remanded back to the trial court for a record to be developed beyond what was available on the motion to dismiss in order to determine whether the charge was a fee or a tax as a matter of law. *Id.* at *2. Chief Judge Dillard similarly noted in his concurrence to the Court of Appeals decision that whether the charge is a tax was "not dispositive" of the Counties' claims because the Counties were "not suing a taxpayer for the recovery of taxes," but rather "assert a *statutory claim* under [the 911 Act] for violation of a legal duty, as well as common-law claims to recover *damages* resulting from alleged negligence, fraud, and breach of fiduciary duty." 802 S.E.2d 686, 701 (Ga. Ct. App. 2017) (emphasis in original).

So too, here, the parties may need to build a record on which the Court could determine whether the South Carolina 911 charge is a tax as a matter of law. But, on the current record on this motion to dismiss, the South Carolina 911 Act repeatedly refers to its cost as a "911 charge" (*see, e.g.*, S.C. Code Ann. §§ 23-47-10(1), 23-47-50(A)), whereas the legislature chose to use the label "tax" in reference to a levy other than the 911 charge (*see, e.g., id.* § 23-47-50(F) ["Fees collected by the service supplier pursuant to this section are not subject to any tax, fee, or assessment, nor are they considered revenue of the service supplier."]). The 911 charge is alleged to be used for the specific purpose of defraying particular 911 call center costs (Dkt. No. 1 ¶ 22), which other courts have identified as indication of a "charge" and not a "tax." *See, e.g., T-Mobile South, LLC v. Bonet*, 85 So. 3d 963, 984 (Ala. 2011); *see also BellSouth Telecomms, Inc. v. City of Orangeburg*, 522 S.E.2d 804 (S.C. 1999) ("Generally, a tax is an enforced

The crux of Defendants' two statutory interpretation arguments is that the 911 Act does not obligate them to charge, collect and remit the quantity, amount or volume that Plaintiffs claim they are required, but fail, to do.[3] But "[t]o the extent the motion to dismiss is premised on the [ ] Complaint's lack of detail concerning the amount of 911 charges Defendant[s] billed and remitted—or should have—and the identities of customers, detailed factual allegations are not required to survive a motion to dismiss under Rule 12(b)(6)." *Autauga Cnty. Em. Mgmt. Comm. District v. Bellsouth Telecomms., LLC*, No. 2:15-cv-0765-SGC, 2016 WL 5848854, at *4 (N.D. Ala. Oct 6, 2016) (denying motion to dismiss).[4] Rather, accepting the facts alleged as true, the Complaint plausibly pleads claims to the Rule 8 or Rule 9(b) standard. The facts alleged as to counts one through four are adequate to put Defendants on fair notice of the allegations and their factual foundations. *See, e.g., Hamilton Cnty. Em. Comms. District v. BellSouth Telecomms LLC*, 852 F.3d 521 (6th Cir. 2017) (finding implied private right of action and reversing district court's grant of motion to dismiss on claim for violation of state 911 statute); *Birmingham Em. Comms.*

---

contribution to provide for the support of government, whereas a fee is a charge for a particular benefit to the payer."). This Court also previously held that the South Carolina 911 Act provides Plaintiffs an implied private right of action. (*Cnty. of Charleston, S.C. v. AT&T Corp., et al.*, 2:17-cv-2534-RMG, Dkt. No. 86).

[3] *See* Dkt. No. 14 n.19. ("For the avoidance of doubt, AT&T does not seek dismissal of the entire Complaint. Rather, AT&T seeks partial dismissal of all counts insofar as they allege AT&T must bill its multiplex customers twenty-three 911 charges, regardless of how many channels on that multiplex service are activated for outward voice transmission, *see* Compl. ¶ 36, and may only bill five 911 charges where the customer purchases 'fractional PRI service not delivered by a broadband connection,' *id.* ¶ 37.") The Court construes this argument, offered in Defendants' joint motion to dismiss, as made jointly by Defendant AT&T and Defendant Bellsouth Telecommunications, LLC.

[4] Moreover, that Defendants responded to the Complaint with such particularized statutory interpretation arguments suggests that the pleading is sufficient under Rule 12(b)(6). *See Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 349 (4th Cir. 2005) ("The sufficiency of a complaint does not depend on whether it provides enough information to enable the defendant to prepare a defense, but merely whether the document's allegations are detailed and informative enough to enable the defendant to respond.") (internal quotation marks omitted).

*District v. TW Telecomm. Holdings, Inc., et al.*, No. 2:15-cv-0245-AKK (N.D. Ala. Mar. 2, 2017) (denying motion to dismiss claims for negligence/negligence per se and breach of fiduciary duty). Count five is also sufficiently pled in that Plaintiffs allege Defendants knew or should have known their monthly remittance checks misstated the appropriate amount charged, collected and remitted to the local governments. *See, e.g., Autauga Cnty.*, 2016 WL 5848854, at *8 (denying motion to dismiss fraud claim on basis of defendant's certified statements allegedly under-reporting amount of telephone lines subject to defendants' billing-and-collection under 911 statute). Taking the facts alleged as true and construed in a light most favorable to the non-moving parties, these allegations are sufficient to plausibly state claims that survive Defendants' Rule 12(b)(6) motion.

Defendants' partial motion to dismiss the Complaint is denied.

**B.      Defendants' Motion to Strike the Class Action Allegations is Granted.**

Defendants argue that Plaintiffs cannot as a matter of law bring suit on behalf of the forty-four other putative class members, which are counties in South Carolina.[5] Generally, courts in this circuit find that a named plaintiff is "generally entitled to pre-certification discovery to establish the record the court needs to determine whether the requirements for a class action suit have been met." *Gibson*, 2017 WL 2936219, at *12 (quoting *Griffin v. Harley Davidson Credit Corp.*, No. 8:08-cv-466-BHH, 2010 WL 233764, at *1 (D.S.C. Jan. 14, 2010)). These conclusions align with the general proposition that "striking a party's pleadings is an extreme measure" and, therefore, that Rule 12(f) motions are "viewed with disfavor and are

---

[5] Defendants argue in part to strike because the 911 charges are a tax and, therefore, that a class action would infringe on the putative class members' "core sovereign function of tax collection." (Dkt. No. 14 at 12.) As discussed, the Court declines to find at this time that these 911 charges are a tax.

infrequently granted." *Stanbury Law Firm. Internal Revenue Serv.*, 221 F.3d 1059, 1063 (8th Cir. 2000).

"However, striking class allegations before the plaintiff files a motion for class certification is not premature where it is unnecessary for the court 'to probe behind the pleadings before coming to rest on the certification question.'" *Burch v. Murphy*, No. 2:17-cv-03311-DLT, 2019 WL 1243860, at *2 (D.S.C. Feb. 25, 2019) (recommending district court grant motion to strike class action allegations) (quoting *Waters*, 2016 WL 3926431, at *4); *see also Pilgrim v. Univ. Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (finding motion to strike not premature where class allegations facially improper). Indeed, the general disfavoring of a motion to strike allegations on the pleadings as a procedural tool does not necessarily hold where the putative class is comprised of separate governments. In South Carolina, the "authority to decide when a claim should or should not be brought by a governmental entity is vested with the entity." *Berry v. McLeod*, 492 S.E.2d 794, 800 (S.C. App. Ct. 1997) (affirming trial court to find that residents do not have standing to bring class action on behalf of town). "The discretionary power is vested in the county board of determining when a suit shall be brought, but that means legal discretion. Where it clearly appears that power is abused, the governing body places itself outside the protection of the rule stated, and may be compelled to act." *Ex parte Hart*, 2 S.E.3d 52, 54 (1939); *see also Owens v. Magill*, 419 S.E.2d 786, 789 (S.C. 1992) ("The duty of determining when a county board has a cause of action for an injury sustained which should be enforced for the protection of its citizens and taxpayers is vested in the county board and cannot be controlled or exercised by a taxpayer absent evidence that the board has unjustifiably refused to assert the cause of action.").

In response, Plaintiffs rely in part on this Court's 2013 order granting a consent motion to certify a class of South Carolina county personnel. *Butts v. Fed. Nat'l Mortg. Ass'n*, 9:12-cv-1912-RMG, Dkt. No. 45 (D.S.C. Mar. 11, 2013). In *Butts*, a class of officials in county registrar and treasurer offices challenged an exemption asserted by Defendants Fannie Mae and Freddie Mac from the state deed recording fee. The Court found, on an uncontested motion, that the Rule 23 certification requirements were satisfied and did not consider any Rule 12(f) arguments nor whether the named plaintiffs had standing to bring suit on behalf of governments.[6] Relatedly, although at least one other district court has granted a contested motion to certify a class of counties, the Court does not find that reasoning sufficiently persuasive to adopt and impede on the sovereignty of these putative class members, so emphasized by South Carolina law. *Cnty. of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 663 (S.D. Fl. 2010) (certifying class of "all counties within the State of Florida that have enacted a tourist development tax under authority of § 125.10104, Florida Statutes" and noting that "[f]or a district court to certify a class action, the named plaintiffs must have standing"). Even if a South Carolina county and town did have standing to bring suit on behalf of other counties across the state, it is unclear that Plaintiffs' purported class of forty-six counties and one town would be sufficiently numerous or share common questions of fact to be certified under Rule 23, including in light of Defendants' collection and remittance practices in each class member county or town. *See Stanbury Law Firm*, 221 F.3d at 1063 (noting the "broad discretion" afforded to the Court when adjudicating a Rule 12(f) motion).

---

[6] Plaintiffs also rely in part on *Kane Cnty., Utah v. United States*, 137 Fed. Cl. 653, 655 (2018), in which the court similarly granted an unopposed motion to certify class of "units of general local government as defined in 31 U.S.C. § 6901(2)."

For these reasons, Defendants' motion to strike the class allegations, including paragraphs 60 through 69 of the Complaint, is granted.

## IV. Conclusion

For the foregoing reasons, Defendants' joint partial motion to dismiss the Complaint and to strike its class action allegations (Dkt. No. 14) is **GRANTED IN PART** and **DENIED IN PART**. The partial motion to dismiss is denied and the motion to strike is granted.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

August 13, 2019
Charleston, South Carolina